### JEFFERY v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### DE WITT v. SAME.
### Nos. 6041–6043.

Circuit Court of Appeals, Sixth Circuit.

Jan. 20, 1933.

662

T. O. Marlar, of Toledo, Ohio (Marshall, Melhorn, Marlar & Martin, of Toledo, Ohio, on the brief), for petitioner.

S. Dee Hanson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, A. G. Divet, C. M. Charest, and A. H. Fast, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

These three cases involve the same questions and were consolidated for hearing and decision. They are petitions by Joseph A. Jeffery, B. A. Jeffery and Mortimer C. De Witt to review decisions of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing on redetermination against each of them deficiencies in income taxes for the year 1922 in the respective sums of $13,423.96, $13,218.16, and $13,197.83.

The facts are that the Jeffery-DeWitt Company manufactured porcelains for spark plugs for the Champion Spark Plug Company. In their laboratory at Detroit, which was under the supervision of J. A. Jeffery, they developed a process for making porcelains suitable for high tension insulators on transmission lines. To manufacture and sell these products they organized the Jeffery-De Witt Insulator Company and purchased and operated a plant at Kenova, W. Va. In March, 1921, each petitioner purchased common stock in the insulator company, each paying $48,466.66 therefor.

This new venture was a failure from the beginning. The company became heavily involved. Its financial situation became so desperate that in 1921 petitioners, who were preferred creditors as well as stockholders, wrote off 80 per cent of their claims against the company. This did not afford the necessary financial relief so that in the same year some of the creditors and stockholders undertook a reorganization. The proposed plan was that the petitioners, the two Jefferys and DeWitt, advance sufficient cash to pay in full all creditors whose claims were less than $100; that all creditors having claims for $100 and up to $400 be paid 25 per cent in cash if they chose to accept it; and that all other creditors be given preferred stock in the new corporation. To further the scheme and to vest title to the

property of the insulator company in the new company, bankruptcy was resorted to and on November 2, 1921, the insulator company was adjudicated a bankrupt. Its schedules developed that its liabilities were $895,909.39. Its assets were listed at $802,057.66, and were appraised at $302,518.50. These assets were sold at a bankruptcy sale in January, 1922, and bought in by a creditors' committee for $150,000. The new company was organized on January 10, 1922.

From the inception of the reorganization scheme there was a general understanding, though without any binding effect, that, if petitioners would advance the cash necessary to perfect the reorganization, stock in the new company would be issued to them in lieu of their stock in the old company. But because they deemed the needed sum too large, petitioners declined to furnish it. The Champion Spark Plug Company, therefore, about the middle of 1922, furnished the necessary cash and subscribed for and had issued to it the entire stock of the new corporation. The stock of the petitioners and of all other stockholders in the old company was an entire loss.

The principal question is, When did petitioners' stock become worthless? The Commissioner found that this occurred in 1921. The Board of Tax Appeals concurred in his finding and it is apparent to us that the evidence is sufficient to sustain the decision of the board and does not clearly and convincingly require a contrary conclusion. Tracy v. Com'r, 53 F.(2d) 575, 579 (C. C. A. 6).

While this court dealt with some aspects of the reorganization of the Jeffery-DeWitt Company in Stranahan v. Commissioner, 42 F.(2d) 729, the claim of the taxpayer in that case was different from the one that is here involved. There the taxpayer claimed a deduction for a debt recoverable only in part, and, deciding that the Commissioner had a broader discretion in dealing with claims of this kind than with deductions claimed for debts wholly worthless, the court held that it could not say on the record that the action of the Commissioner for 1921 was plainly arbitrary. Here it is claimed that the stock did not become worthless until 1922. It is obvious that a claim for a debt against the company might have been worth its full value in 1921 and the stock of the company be entirely worthless, for the assets of the company would be subjected first to the payment of debts, and only such assets as remained thereafter could be applied to the stock liability. Besides, there was in the Stranahan Case a reorganization and an actual exchange of

stock for the indebtedness, whereas in this case there was no binding obligation to give stock in the new company for the old stock, and there was no possibility of the taxpayers deriving any value from their old stock except upon the advancement of large sums of money which they neither did nor had any legal right to do. In this situation we find no ground for saying that there was not substantial evidence to support the finding of the Commissioner and the Board of Tax Appeals that the stock became and was fairly ascertained to be worthless in 1921.

Petitioners raise the additional question whether, if the loss upon their stock occurred in 1921, they might not have the benefit of it as a deduction in 1922 under section 204 of the Revenue Act of 1921 (42 Stat. 231), which provides for deduction for "net loss" from the operation of any trade or business regularly carried on by the taxpayer. This question was never presented to nor considered by either the Commissioner or the Board of Tax Appeals. Cf. Glassell v. Commissioner (C. C. A.) 42 F.(2d) 653. Aside from that point made by the respondent, the loss on the stock was not, in our view, a loss resulting from the operation of a "trade or business regularly carried on" by the petitioner within the meaning of the section of the act relied upon. Bedell v. Commissioner (C. C. A.) 30 F.(2d) 622, 625; Goldberg v. Commissioner, 59 App. D. C. 147, 36 F.(2d) 551; Stephenson v. Commissioner (C. C. A.) 43 F.(2d) 348, 350; Burnet v. Clark, 53 S. Ct. 207, 77 L. Ed. ——, decided by the Supreme Court December 12, 1932. The discussion in Washburn v. Commissioner (C. C. A.) 51 F.(2d) 949, does not require a different conclusion, for it appears here that the losses were sustained in single stock transactions and not in regular trade or business.

An order will be entered in each case affirming the decision of the Board of Tax Appeals.