GOWEN v. COMMISSIONER OF INTERNAL
REVENUE.

No. 6247.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1933.

I. W. Sharp, of Cleveland, Ohio (Frank X. Cull and Bulkley, Hauxhurst, Inglis & Sharp, all of Cleveland, Ohio, on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (G. A. Youngquist, A. H. Conner, C. M. Charest, and T. M. Mather, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

During the year 1911 petitioner became interested in a patented gas refrigeration machine for domestic use. He caused the Iceless Refrigerator Company and the Iceless Refrigeration Company to be incorporated. The former owned the patents, and the latter manufactured the machines. In 1912 both companies were combined under the name of the Iceless Refrigeration Company, and in 1915 the Iceless Machine Company was incorporated to take over the assets and business of the Refrigeration Company. As a result of his investments from time to time in the several corporations thus engaged in the enterprise, petitioner had acquired common and preferred stock of the Iceless Machine Company at a total cost of $230,488.40. The project was never successful, and in 1918 it was decided to liquidate the business. The properties of the corporation, including the patents, which the petitioner considered basic and in the value of which he still had great faith, were turned over to liquidating trustees. Within the next few years practically all assets were sold with the exception of the patents, all debts were paid, and a capital distribution of 40 per cent. was made to the preferred stockholders.

Attempts to satisfactorily dispose of the patents prior to the year 1924 having proved unsuccessful, petitioner decided to wait no longer for completion of the liquidation, but sold all the interest he might have, whether by virtue of his holdings of preferred stock ($5,000 par value) or by virtue of his holdings of common stock ($225,488.40 par value), for the sum of $100. Giving effect to the liquidating dividend the petitioner had already received upon his preferred stock and to the $100 received by the sale in 1924, and applying these receipts first to the preferred stock investment, it is evident that he had suffered a capital loss of $2,900 on account of his preferred stock and all of his investment in the common stock, and the sole question with which we are here concerned is whether, as a matter of law, the loss of $225,488.40 on account of his common stock holdings is to be regarded as having been suffered in the year 1924, when he sold both his preferred and common stock interests for $100,

or prior to that date. In his income tax return for 1924 petitioner claimed a deduction for the total loss ($228,388.40). Subsequently the respondent disallowed so much of the loss as represented petitioner's investment in common stock ($225,488.40), with a resulting deficiency assessment. The Board of Tax Appeals affirmed, and the present petition to review followed.

At the time of the appointment of the liquidating trustees, $34,500 par value preferred stock was outstanding. The 40 per cent. dividend upon this stock therefore amounted to $13,800, leaving a par value of preferred stock, having preference in distribution over common stock, in the sum of $20,700. After payment of the 40 per cent. dividend, there was approximately $3,000 of cash remaining in the hands of the liquidating trustees, together with some small accounts receivable. The patents were ultimately sold in 1926 for $1,000. While the evidence contains the indefinite statement of opinion by the petitioner that "those patents had a large value" and that he always felt that they "would be sold at some future time to some concern which would pay a considerable sum of money for them and that they would be compelled to pay royalties, which * * * would have been a very handsome return on the investment," there is nothing definite as to value and no evidence whatever tending to show a reasonable valuation of more than $20,000, which sum would have had to have been secured for the patents before anything whatever would be available for common stockholders.

■■ Losses are deductible from income for those years only in which the losses are sustained. In order that a loss arising from investment in the capital stock of a corporation may be regarded as "sustained" in any given year, it is ordinarily necessary either that there be a final disposition of the investment, as by sale or exchange, or that there be some "identifiable event" by which the loss is otherwise clearly evidenced. Howard v. Commissioner, 56 F.(2d) 781 (C. C. A. 6); Commissioner v. R. J. Darnell, Inc., 60 F.(2d) 82 (C. C. A. 6); Commissioner v. Cleveland Trinidad Paving Co., 62 F.(2d) 85 (C. C. A. 6). It is also true that instances may arise in which the value of the shares held has "become finally extinct" and in which the taxpayer is justified in claiming deduction [Royal Packing Co. v. Commissioner, 22 F. (2d) 536 (C. C. A. 9); De Loss v. Commissioner, 28 F.(2d) 803 (C. C. A. 2)]; but we are of the opinion that the taxpayer is not required to ascertain at his peril the year in which such value may become extinct, provided the stock is still held and there may be some future value, and provided further that there is an absence of an identifiable event which has been brought to the taxpayer's knowledge and which clearly evidences the destruction, either then or theretofore, of value. On the other hand, where that event happens, as in bankruptcy, voluntary liquidation, actual cessation in the conduct of the business, or the like, and all reasonable hope and expectation of even a partial return of capital is gone, the taxpayer should not be permitted to delay taking the deduction simply because it is more advantageous to him to take it in a later, rather than the earlier, year.

■■ In Jeffery v. Commissioner, 62 F.(2d) 661 (C. C. A. 6) we held that, where bankruptcy had intervened and there was no possibility of the taxpayer deriving value from his investment in stock except in the event of a proposed and very problematical reorganization, the loss was suffered in the year in which bankruptcy occurred. The present case seems to us to present a situation closely analogous to that arising in the case just cited. The term of the monopoly of the patents was rapidly expiring. In spite of the money invested, the business had been a complete failure. There was no clamor by purchasers for the patents, or adjudication of their basic nature, or evidence of their commercial success. Whatever expectation there may have been of a sale for a large sum seems to us to have been founded more in hope and fancy than upon facts and experience. The identifiable event indicating the probability of a total loss of common stock investment is found in the decision to liquidate in 1918. This is comparable to the adjudication in bankruptcy in Jeffery v. Commissioner, supra. In order to procure a reversal of the action of the Commissioner, it was necessary, we think, that the petitioner present to the Board of Tax Appeals at least substantial evidence tending to prove that the value of the patents reasonably exceeded the amount of preferred stock still entitled to preference in distribution. Only upon such an assumption would there be value remaining for distribution to common stockholders. An examination of the record shows that the petitioner has wholly failed to sustain the burden thus placed upon him, and for this reason the judgment of the Board of Tax Appeals must be affirmed.