## SAYLOR ELECTRIC & MANUFACTUR- ING CO. v. UNITED STATES.

### No. 13234.

District Court, E. D. Michigan, S. D.

Feb. 11, 1939.

Austin E. Stebbins, of Detroit, Mich., for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Arthur L. Jacobs, Sp. Assts. to the Atty. Gen., and John C. Lehr, U. S. Atty., and Peter Gilbert and Thomas Smith, Asst. U. S. Attys., all of Detroit, Mich., for defendant.

O'BRIEN, District Judge.

This is an action to recover income tax paid by the plaintiff for the year of 1930 sought to be recovered upon the theory that such tax was erroneously paid and collected. The plaintiff claims a right to the recovery thereof under Sec. 23(f), Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Code § 23(f), and in accordance with Article 174 Reg. 74 of 1928 which provides as follows: "If the stock of a corporation becomes worthless, its cost or other basis determined under section 113 may be deducted by the owner in the taxable year in which the stock becomes worthless, provided a satisfactory showing of its worthlessness be made, as in the case of bad debts."

Plaintiff became the owner in 1927 of capital stock of the Zenith Thread Company at a total cost to it of $31,325. From the date of the incorporation of the Zenith Thread Company it manufactured a braided thread upon machines covered by patents owned by it until the end of March of 1930. The plaintiff advanced large sums of money to the Zenith Thread Company to assist the latter in the sale of its goods and in the management and development of its affairs and for the purpose of building additional braiding machines. The Zenith

Thread Company operated at a loss from the beginning and it was only because of the fact the plaintiff advanced large sums of money to it that it was able to continue in business. As a partial security for the money so advanced by plaintiff the Zenith Thread Company executed a mortgage on March 3, 1927, in favor of plaintiff to cover past and future advances which mortgage covered all of the present and after-acquired assets of the Zenith Thread Company.

The plaintiff refused to advance any further money to the Zenith Thread Company after March of 1930 and as a consequence the latter immediately was forced to close down its business and made a decision to permanently discontinue its business and to sell all of its assets at the best possible figure after the end of March of 1930. Thereafter, it sold all of its manufactured products it then had on hand making the last regular sale on July 28, 1930, and thereafter by five sales of odds and ends it made its last sale of any material on December 22, 1930.

There was a total cessation of business of the Zenith Thread Company in the year 1930 and it never again resumed business thereafter. An officer of the Zenith Thread Company shortly after March of 1930 made a trip to Boston, Massachusetts, in an endeavor to sell all of the assets of the Zenith Thread Company, which trip proved to be in vain. After the year of 1930 all of its assets were sold as junk.

The plaintiff contends it is entitled to a deduction in its 1930 tax return from its income in the sum of $31,325. and upon this contention it filed its claim for refund which was disallowed by the commissioner and it thereafter instituted this action for its collection.

The decision must turn upon the occurrence of the "identifiable events" by which plaintiff's losses from its stock investment was evidenced.

The plaintiff has made a satisfactory showing that its stock in the Zenith Thread Company became worthless in the year of 1930 by uncontrovertible identifiable events.

Those identifiable events include the decision in March of 1930 to liquidate the Zenith Thread Company; the cessation of its business in 1930; the fact that its financial backing was withdrawn in 1930 and the further fact that without such financial backing it had no funds with which to meet its pay roll or otherwise to continue in business.

The fact that the residue of the assets of the Zenith Thread Company were sold as junk subsequent to the year of 1930 would not have justified the taxpayer to have claimed that his stock in such company became worthless subsequent to the year 1930 in view of the foregoing identifiable events.

██ Upon this ground the law controlling this court is found in the following from Gowen v. Commissioner, 6 Cir., 65 F.2d 923, 924:

"Losses are deductible from income for those years only in which the losses are sustained. In order that a loss arising from investment in the capital stock of a corporation may be regarded as 'sustained' in any given year, it is ordinarily necessary either that there be a final disposition of the investment, as by sale or exchange, or that there be some 'identifiable event' by which the loss is otherwise clearly evidenced. Howard v. Commissioner, 56 F.2d 781 (C.C.A. 6); Commissioner v. R. J. Darnell, Inc., 60 F.2d 82 (C.C.A. 6); Commissioner v. Cleveland Trinidad Paving Co., 62 F.2d 85 (C.C.A. 6). It is also true that instances may arise in which the value of the shares held has 'become finally extinct' and in which the taxpayer is justified in claiming deduction (Royal Packing Co. v. Commissioner, 22 F.2d 536, (C.C.A. 9); De Loss v. Commissioner, 28 F.2d 803 (C.C.A. 2)); but we are of the opinion that the taxpayer is not required to ascertain at his peril the year in which such value may become extinct, provided the stock is still held and there may be some future value, and provided further that there is an absence of an identifiable event which has been brought to the taxpayer's knowledge and which clearly evidences the destruction, either then or theretofore, of value. On the other hand, where that event happens, as in bankruptcy, voluntary liquidation, actual cessation in the conduct of the business, or the like, and all reasonable hope and expectation of even a partial return of capital is gone, the taxpayer should not be permitted to delay taking the deduction simply because it is more advantageous to him to take it in a later, rather than the earlier, year. * * *

"The identifiable event indicating the probability of a total loss of common stock

investment is found in the decision to liquidate in 1918."

Prior to and up to March of 1930, although the Zenith Thread Company's financial situation was most precarious, it had been able to obtain capital from the plaintiff with which to proceed and was actually manufacturing its product and conducting its business. It was not until March of 1930 that hope of ultimate success was finally abandoned. After March of 1930 when the Zenith Thread Company could obtain no further financial backing and could not meet its pay roll or other running and operating expenses there was not the remotest possibility that it would ever be able to pay off its debts, including the chattel mortgage on its assets. Not by any stretch of the imagination can it be said that there was any possibility after March of 1930 of its stock having the slightest value.

A further identifiable event is the very fact that the assets of the Zenith Thread Company had been depreciated to exhaustion.

 Upon the happening of the identifiable event evidenced by the fact that the assets of the business had been depreciated to exhaustion in 1930 and also upon the additional identifiable events previously related, this court must rule that such losses by reason of the worthlessness of the stock of the Zenith Thread Company was evidenced by closed and completed transactions fixed by such identifiable events, all of which occurred in the year of 1930.

The law controlling this court in this ruling is found in the following from Indûstrial Rayon Corporation v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 383: "The petitioner contends that the determination of worthlessness in 1926 is not conformable to the rules of law that losses must be evidenced by closed and completed transactions fixed by identifiable events. 'An identifiable event' in the taxing decisions, as we understand it, is an incident or occurrence that points to or indicates a loss—an evidence of a loss. The evidence need not, though, consist of stereotypic plan or scope. It may vary according to circumstances and conditions. We see no reason why it might not appear in the assets of a business depreciated to exhaustion. The cases relied on by the petitioner do not hold otherwise. While some of them point out evidences of losses, none of them excludes as such the exhaustion of assets. Other authorities in precept and decision show its pertinence. Denman v. Brumback, 6 Cir., 58 F.2d 128; Gowen v. Commissioner, 6 Cir., 65 F.2d 923. Indeed, the Treasury Regulations declare that while mere shrinkage in the value of a stock is not deductible as a loss, one does occur when a stock becomes finally worthless. Here the throwing company, after a period of losing money in the operation of its business, and finding itself heavily in debt, without hope of recuperation, decided in 1926 to dispose of its lease, sell its properties and assets, and abandon business. It was without credit or assets and for all practical purposes was hopelessly insolvent. The petitioner's investment in its stock was then worthless, too. We think the loss occurred as at that time and not in 1927."

The court concludes plaintiff is entitled to judgment for the refund of such tax erroneously paid and collected, together with interest and costs.