Charles A. POLIZZI and Angela Polizzi, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Charles A. POLIZZI, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 13584, 13585.

United States Court of Appeals Sixth Circuit.

April 2, 1959.

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a)

Arlene B. Steuer, Cleveland, Ohio, Michael E. Cozza, Cozza & Steuer, Cleveland, Ohio, on brief, for petitioners.

Joseph Kovner, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Dept. of Justice, Washington, D. C., on brief, for respondent.

Before MARTIN, Chief Judge, MILLER, Circuit Judge, and O'SULLIVAN, District Judge.

SHACKELFORD MILLER, JR., Circuit Judge.

The petitioner Charles A. Polizzi filed timely individual income tax returns for the years 1944 and 1945. He did not file a return for the year 1947. He and his wife, Angela Polizzi, filed timely joint returns for the years 1949 and 1950. In a review of deficiencies determined by the Commissioner for each of the years referred to, the Tax Court approved deficiencies in income tax for the years 1944, 1945, 1947, 1949 and 1950, additions to the tax on account of fraud for each of the years except 1950, an addition to the tax for the year 1947 for failure to file a return, and additions to the tax under § 294(d) (2), 26 U.S.C.A. § 294(d) (2), for substantial underestimate of the estimated tax for each of the years except 1945. The taxpayers seek a review of the Tax Court's decision.

Since 1929 and through the taxable years taxpayer, who was 61 years of age at the time of these proceedings, was engaged in various business activities. He had been in the real estate business and was at one time in the vending machine business. He loaned money to individuals and to corporations engaged in various activities. In some instances, where he advanced funds to corporations he received stock. Other advances were loans, on some of which he received interest, during the period 1944 through 1950. He had financial interests in several enterprises in the State of Kentucky, which included restaurants, bars, gambling clubs, and landholding companies. The taxpayer's business transactions were almost entirely cash transactions. He had one or two banking accounts for only brief periods, sometime between 1949 and 1952. He made it a practice to keep cash in his living quarters. After he was married he and his wife purchased a combination safe which they bolted to the floor in a clothes closet in the house. They kept cash in the safe. His wife knew the combination of the safe and had access to it. No records were ever kept of the amounts of cash on hand. When the taxpayer was out of the city his wife took care of payments that needed to be made by paying cash out of the safe. The taxpayer at some time kept one or two books containing information as to his investments and his receipts from companies in which he was interested. However, such records as he had were destroyed prior to the hearing, either when he was subpoenaed to appear before the Kefauver Committee or when he moved from one residence to another.

Upon the failure of the taxpayers to produce books and records which reflected

their income, the Commissioner made an exhaustive investigation into the discoverable assets and liabilities and the financial transactions of the petitioners in an effort to determine as accurately as possible the amounts of their income for the taxable years. Based on the data collected by the examining revenue agents, the Commissioner determined the net income of the taxpayers for the years in question by the net worth plus nondeductible expenditure method.

The evidence is fully reviewed and taxpayers' numerous contentions carefully considered in a detailed and thorough findings of fact and opinion by the Tax Court, filed August 14, 1957, to which reference is made. Except in the two instances hereinafter discussed, we are of the opinion that the findings are supported by the evidence and are not clearly erroneous and that there is no error in the conclusions of law based thereupon, and the decision of the Tax Court in those respects is affirmed.

The evidence showed that during the year 1950 the taxpayers received checks totaling $94,125.31, which were endorsed by them and either cashed by them or deposited in an account against which checks were drawn. The Commissioner included $80,647.58 of these cash receipts in the final net worth determination for the year 1950 under a classification of "Other Expenditures." This was in addition to an amount of $40,652.75 added to the final net worth determination under the classification of "Living Expenses," which included taxes, contributions and insurance premiums, as well as the usual personal living expenses. This item of $40,652.75 was later reduced by stipulation of the parties to $35,652.75 and taxpayers on this review make no contention that this amount was improperly included in the net worth determination. Thomas v. Commissioner, 6 Cir., 223 F.2d 83, 87. However, they challenge the inclusion of the additional $80,-647.58 as "Other Expenditures."

The revenue agent testified that he included these cash expenditures in the net worth statement because they were "unexplained expenditures," that he could not trace where the money went, and that he had no way of knowing what the money was used for. He admitted that he found new assets for the year 1950, but stated that he had no way of knowing how they were paid for. He admitted that some of it could have been used in living expenses or in building up the increase in net worth. He stated that the only logical explanation which he could give for including the expenditure of this $80,-647.58 in the net worth statement was that "I couldn't explain the expenditures." He was asked the following question and gave the following answer, "And so you readily admit that this $80,000 item could be a duplication in whole or in part, is that correct? A. It may be. I don't know."

Where the "net worth" method is used to compute net income, actual receipts are not taken into account. The increase in net worth adjusted for allowable depreciation, plus the nondeductible personal expenses, constitute the net income for the year. This is based upon the theory that what is received by the taxpayer during the year is reflected by what he spends in living and personal expenses and what he has left either in cash or invested in additional assets at the end of the year. Mertens, Law of Federal Income Taxation, Vol. 10, Sec. 55.19. This rule was not followed in the present case.

The Government attempts to justify the deviation from the rule on the ground that receipt of cash income having been shown, it became the duty of the taxpayers to show that it was used to defray personal living expenses or to purchase assets which were included by the Commissioner in the closing net worth for 1950.

What the Government urges upon us is really the rule that under certain conditions the burden of going forward with the evidence shifts from the party upon whom the burden of proof rests to the other party. But this rule is merely a subsidiary one to the general rule on burden of proof and does not

shift the burden of proof from the party upon whom it is originally imposed. O'Brien v. Equitable Life Assurance Society of United States, 8 Cir., 212 F.2d 383, 386–387, certiorari denied 348 U.S. 835, 75 S.Ct. 57, 99 L.Ed. 658; Mitchell v. New England Mutual Life Ins. Co., 4 Cir., 123 F.2d 246, 249–250. In the usual Tax Court proceeding contesting the correctness of a deficiency assessment the Commissioner's determination is presumptively correct, and the burden of proof is upon the taxpayer to upset it. The rule of going forward with the proof adds nothing to this burden already existing, and strictly speaking, has no application to this case.

■ In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, the Supreme Court said that the use of the net worth method is fraught with danger for the innocent and that the courts must closely scrutinize its use. It pointed out that although it may sound fair to say that the taxpayer can explain the "bulge" in his net worth, he may be entirely honest and yet unable to recount his financial history. In electing to use the net worth method the Government assumes certain obligations which must be complied with in order to make such procedure a fair one for the taxpayer. What we really have here is not a question of going forward with the proof but the question of determining whether under the particular circumstances of this case the evidence, or the lack of evidence, considered as a whole in the light of the warnings given to us in Holland v. United States, supra, was of such a character as to rebut the presumption that the Commissioner's deficiency determination was correct. Andrews v. Commissioner, 2 Cir., 135 F.2d 314, 318–319, certiorari denied 320 U.S. 748, 64 S.Ct. 51, 88 L.Ed. 444.

■ The Commissioner's determination of income for 1950 is based upon the assumption, without proof, that no part of the $80,647.58 was used for the payment of living expenses or in the acquisition of additional assets during the calendar year. In the absence of evidence showing how the $80,647.58 cash was spent or showing what other money was available and was used to pay living expenses in the amount of $35,652.-75, we think it is unreasonable and not justifiable to assume that no part of the $80,647.58 was spent in paying at least a part of the living expenses or in acquiring at least a part of the additional assets which were on hand at the end of the taxable year. The Government's witness frankly admitted the possibility that the Commissioner's determination included a duplication of income. In proceedings before the Tax Court, as distinguished from suits for refund in the District Court, the taxpayer is not required to show the correct amount that lawfully might be taxed against him, but it is sufficient to show that the Commissioner's determination is invalid. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553.

In Thomas v. Commissioner, supra, we reversed the decision of the Tax Court in a net worth case because of the strong underlying element of guesswork involved in the Commissioner's determination. In Harp v. Commissioner, 6 Cir., 263 F. 2d 139, decided February 11, 1959, the Commissioner's determination was sustained by the Tax Court because of the failure of the taxpayers to go forward with the proof and supply information about their assets which would warrant changing the Commissioner's determination. We reversed this ruling, pointing out that under Holland v. United States, supra; Durkee v. Commissioner, supra; and Thomas v. Commissioner, supra, the Government's evidence was insufficient to meet the requirements imposed upon it in net worth cases. In view of the evidence in this case above referred to, we reach the same result with respect to the inclusion of the $80,647.58 in the closing net worth determination for the year 1950. United States v. Caserta, 3 Cir., 199 F.2d 905, 907–908; Clark v. Commissioner, 3 Cir., 253 F.2d 745, 749–750;

Kite v. Commissioner, 5 Cir., 217 F.2d 585, par. 4(3) in note at pages 587, 588.

Polizzi contended in the Tax Court that he made large loans to Steel Producers, Inc., which became worthless in 1949, thereby entitling him to a bad debt deduction for the year 1949. The Tax Court found that the amount involved was $144,000.00 but that it constituted a capital investment instead of a loan. There was no question but that this resulted in a total loss, but the Tax Court held that the loss was sustained in 1950, not in 1949. On this review the taxpayers challenge only the finding that the loss was sustained in 1950. They contend that they are entitled to a capital loss deduction in 1949 resulting from a loss from the sale or exchange of capital assets, as provided by Sec. 23(g), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(g), subject to the limitations imposed by Sec. 117, 26 U.S.C.A. § 117.

The Tax Court's ruling that the loss occurred in 1950 was based upon the facts that although Steel Producers, Inc., became insolvent in 1948, which condition became worse throughout 1949, there was throughout 1949 the matter of a possible reorganization, that it was not until 1950 that the assets of the corporation were actually sold, and that the corporation was not adjudicated a bankrupt until June 14, 1950. It held that there was no identifying event fixing the worthlessness of the investment prior to 1950 when the assets were sold and the corporation was actually adjudicated bankrupt. United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120.

It is true that in many cases an adjudication in bankruptcy is regarded as the identifying event which fixes the year of the loss. Jeffery v. Commissioner, 6 Cir., 62 F.2d 661; Brown v. Commissioner, 6 Cir., 94 F.2d 101, 103. But it is also settled law that there may be some identifiable event other than bankruptcy which clearly evidences that a loss has been sustained. Gowen v. Commissioner, 6 Cir., 65 F.2d 923, 924.

In the present case the evidence showed that in February, 1949, Steel Producers, Inc., was unable to obtain additional capital and discontinued operations, that by May, 1949, the company had lost its lease and the court-appointed trustee rendered his report in which he found the company hopelessly insolvent and incapable of further operations. He recommended a sale of the assets. In July, 1949, the court-appointed appraiser appraised the assets, which had a book value in excess of $600,000.00, at $32,000.00. The company had over $700,000.00 in debts. In December, 1949, the trustees found a purchaser for the assets for the sum of $30,000.00 and made application through the court for approval of the sale. Although the approval was not obtained until January 4, 1950, and adjudication in bankruptcy was postponed until June 14, 1950, the foregoing evidence convinces us that this loss had actually been incurred before the end of 1949. In some cases it is proper to postpone the date of the actual loss even though insolvency exists because under reorganization proceedings the company has a potential value. But there was no potential value in this corporation at the end of 1949. As stated in United States v. S. S. White Dental Manufacturing Company, supra, 274 U.S. 398, 402–403, 47 S.Ct. 598, 600, a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment, and that "The taxing act does not require the taxpayer to be an incorrigible optimist." See also: Mertens Law of Federal Income Taxation, Vol. 5, Sec. 28.67, 28.68; Industrial Rayon Corp. v. Commissioner, 6 Cir., 94 F.2d 383. The Tax Court was in error in not permitting the taxpayers to take this loss deduction in the year 1949. Gowen v. Commissioner, supra, 6 Cir., 65 F.2d 923, 924; Peabody v. Commissioner, 38 B. T. A. 1086.

The decision of the Tax Court is affirmed in part and reversed in part and the case is remanded for further proceedings not inconsistent with the views expressed herein.