PAUL B. OSBORNE AND MARY E. HAYSE, F.K.A. MARY H. OSBORNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Osborne v. Commissioner
Docket No. 12057-93
United States Tax Court
T.C. Memo 1995-353; 1995 Tax Ct. Memo LEXIS 353; 70 T.C.M. (CCH) 243; August 1, 1995, Filed *353 An appropriate order will be issued and decision will be entered under Rule 155. Paul B. Osborne, pro se. For respondent: Jennifer H. Decker. GOLDBERG
GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioners' Federal income tax for 1988 in the amount of $ 2,123. Following respondent's concession regarding unreported interest, the issues for decision are: (1) Whether petitioner Paul B. Osborne's right of due process was violated by respondent during the examination of petitioners' 1988 joint Federal income tax return, and, if so, whether this violation invalidates the notice of deficiency; (2) whether petitioners are entitled to a loss under section 165(g) for worthless securities in the amount of $ 17,733; and (3) whether petitioners' medical expense deduction must be reduced to reflect an increase in their adjusted gross income. *354 Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time their petition was filed, Paul B. Osborne resided in Jamestown, Kentucky, and Mary E. Hayse resided in Louisville, Kentucky. References to petitioner in the singular are to Paul B. Osborne. FINDINGS OF FACT On February 8, 1988, petitioner purchased 2,000 shares of common stock in Maxicare Health Plans, Inc. (Maxicare), a corporation engaged in the business of establishing and operating health maintenance organizations. Petitioner paid an aggregate of $ 8,348 for the shares. On March 7, 1988, petitioner purchased an additional 3,000 shares of Maxicare for the aggregate price of $ 9,495. On December 5, 1988, NASDAQ national market issues listing (NASDAQ) reflected the closing price for Maxicare stock for the immediately preceding trading day; i.e., December 2, 1988, as $ .625 per share. On January 3, 1989, the NASDAQ reflected the closing price of Maxicare stock for the immediately preceding trading day; i.e., December 30, 1988, as $ .75 per share, with a total trading volume of 626,100 shares. On March 16, 1989, Maxicare *355 filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Case No. SA 89-01549. Maxicare's plan of reorganization (the plan) was confirmed on July 16, 1990. Article 4.12 of the plan provided for the cancellation and retirement of all outstanding and authorized shares of common stock. In exchange, shareholders would receive a distribution equal to their pro rata share of 2 percent of the shares of new common stock (the new stock) issued by the reorganized corporation and warrants for the purchase of an additional 5 percent of the total shares of new stock on a fully diluted basis. Equity holders were entitled to shares of the new stock without additional consideration. Petitioner became aware of Maxicare's financial difficulties in late 1988. However, he did not file a claim in Maxicare's bankruptcy and did not exchange his shares of Maxicare stock pursuant to the plan. At present, petitioners still own the original shares of Maxicare stock petitioner purchased in 1988. Petitioners did not claim a loss for worthless securities on their 1988 joint Federal income tax return. This issue was *356 not raised until after petitioners were notified by respondent in July 1991 that their 1988 return was selected for examination. On July 10, 1992, respondent received a Form 872A signed by petitioners consenting to the extension of the statute of limitations for assessment for the petitioners' taxable year 1988. On or about January 4, 1993, petitioners executed a Form 872-T, thereby terminating their consent to extend the time to assess tax for the 1988 taxable year. Once respondent received petitioners' executed Form 872-T, she had 90 days to assess additional income tax attributable to petitioners' 1988 joint Federal income tax return. On February 15, 1993, petitioner requested an administrative appeals hearing regarding respondent's proposed adjustments. On March 12, 1993, respondent issued a notice of deficiency with respect to petitioners' 1988 taxable year. Petitioners filed their petition on June 14, 1993. On or about February 24, 1994, petitioners were informed that respondent's Appeals Office was available for a conference regarding their case. No such conference was held, and, on May 9, 1994, their case was tried before this Court. In her notice of deficiency, respondent *357 determined that petitioners were not entitled to a loss in 1988 for worthless securities because petitioners failed to establish that during that year the 5,000 shares of Maxicare stock became worthless as defined by section 165(g) and the regulations thereunder. Respondent further determined that based on unrelated adjustments conceded by petitioners involving unreported pension income, petitioners' allowable medical expense deduction was reduced due to the increase in their adjusted gross income. Petitioners contend that their shares of Maxicare stock are worthless because petitioner was unable to sell the stock, and because broker commissions amounted to more than the aggregate sale price of the stock. At trial, petitioner orally moved to invalidate the notice of deficiency based on respondent's alleged violation of his right to due process in the course of examining petitioner's 1988 return. OPINION I. Due Process
Petitioner argues that the notice of deficiency should be invalidated because of alleged violations of his constitutional right of due process. He contends that respondent conducted two separate examinations of his 1988 taxable year and that deliberately misleading *358 information regarding the administrative appeal process appears in Internal Revenue Service publications. Respondent contends that neither the alleged double examinations, nor the allegedly misleading language of the publications rise to the level of a violation of petitioner's right of due process, and that there exists no grounds upon which to invalidate the notice of deficiency. In Riland v. Commissioner, 79 T.C. 185, 201 (1982), we observed that the Tax Court provides a de novo proceeding and "absent substantial evidence of unconstitutional conduct on respondent's part which would impugn the integrity of this Court * * * we generally will not * * * examine respondent's motives or procedure leading to [her] determination." Based on the record in this case, we find that petitioner has not proven that respondent conducted two distinct examinations of his 1988 taxable year. See, e.g., Collins v. Commissioner, 61 T.C. 693 (1974). Petitioner further contends that the wording of Internal Revenue Service publications regarding appeals and administrative hearings is deliberately misleading, and that respondent used the promise *359 of an appeal to elicit information from petitioner, and intended to exploit that information to respondent's advantage. We find petitioner's argument to be without merit. Petitioner does not reveal what information was elicited by respondent, nor does he explain how such information was wrongly used by respondent. Under Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), parties are directed to participate in informal discovery between themselves before attempting to invoke formal discovery procedures. As such, an informal request by respondent for information from petitioner is hardly improper. With regard to allegedly misleading statements made in Internal Revenue Service publications, informal publications are not authoritative sources of Federal tax law, and, therefore, do not control the outcome of the issues in this case. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Even if the publications at issue led petitioner to believe he was entitled to an appeal, absent unusual circumstances not present in this case, the failure *360 by respondent to follow her own administrative procedures does not rise to the level of a violation of the Fifth Amendment Due Process Clause of the Constitution. Riland v. Commissioner, 79 T.C. 185, 200-202 (1982), and cases cited therein. Further, the providing of an appeal is not essential to the validity of a notice of deficiency. Cataldo v. Commissioner, 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); Griffith v. Commissioner, T.C. Memo. 1989-70. Based on the foregoing, we conclude that petitioner's constitutional right of due process has not been violated and the notice of deficiency is valid. Therefore, petitioner's oral motion to invalidate the notice of deficiency for lack of due process is denied. II. Maxicare Stock
The second issue for decision is whether petitioners are entitled to a capital loss for 1988 for worthless securities under section 165(g). Section 165(g) allows a deduction for any security that is a capital asset which becomes worthless during the taxable year. Section 1.165-5(c), Income Tax Regs., provides in pertinent *361 part: (c) Capital loss. -- If any security which is a capital asset becomes wholly worthless at any time during the taxable year, the loss resulting therefrom may be deducted under section 165(a) but only as though it were a loss from a sale or exchange, on the last day of the taxable year, of a capital asset. * * * [Emphasis added.]
Whether shares of stock become worthless, and the taxable year in which such worthlessness occurred, are questions of fact on which petitioners bear the burden of proof. Rule 142(a); Delk v. Commissioner, T.C. Memo. 1995-265, and cases cited therein. A taxpayer's beliefs regarding the value, or worthlessness, of the security are not sufficient to establish a loss, although they are not to be ignored. Boehm v. Commissioner, 326 U.S. 287, 292-293 (1945). Shares of stock are worthless when they cease to have liquidating value (the corporation has an excess of liabilities over assets) and do not have a potential future value. Austin Co. v. Commissioner, 71 T.C. 955, 969-970 (1979) (citing the leading case of Moton v. Commissioner, 38 B.T.A. 1270, 1278-1279 (1938), *362 affd. 112 F.2d 320 (7th Cir. 1940)). A taxpayer has the burden of proving both elements of this two- prong test. Steadman v. Commissioner, 50 T.C. 369, 377 (1968), affd. 424 F.2d 1 (6th Cir. 1970)); Delk v. Commissioner, supra (citing Figgie Intl., Inc. v. Commissioner, 807 F.2d 59, 62 (6th Cir. 1986), affg. T.C. Memo. 1985-369). "A mere shrinkage in the value of stock owned by the taxpayer, even though extensive, does not give rise to a deduction under section 165(a) if the stock has any recognizable value on the date claimed as the date of loss." Sec. 1.165-4(a), Income Tax Regs. Worthlessness is generally shown by a relevant identifiable event which "clearly evidences destruction of both the potential and liquidating values of the stock." Austin Co. v. Commissioner, supra at 970. Petitioners stipulated that the closing price of Maxicare stock on December 30, 1988, was $ .75 per share. Petitioner argues, however, that this listing is not a true indication of the value of Maxicare's *363 stock on that date. We disagree. Petitioner has not shown that the price of the security listed on NASDAQ did not reflect the price at which a willing buyer would be able to buy the stock and a willing seller would be able to sell the stock. The volume of trading on this date is further evidence that a market existed for the shares held by petitioners. As such, we find that petitioners' 5,000 shares of Maxicare stock did not become wholly worthless, as required under section 165(g), in 1988. Petitioner argues that Maxicare stock had no liquidating value as of December 31, 1988, and, in support of his position, presented two articles discussing the condition of Maxicare in 1988. The first, entitled "Wasserman Resigns Maxicare Post" and published in the August 12, 1988, issue of Modern Healthcare, reported that Maxicare's liabilities exceeded its assets in 1987 by $ 29.3 million. The second, entitled "The Mess at Maxicare" and published in the June 27, 1988, issue of Forbes, reported that Maxicare's liabilities exceeded its assets in 1988 by $ 51 million. While we recognize that these articles were published in magazines of wide distribution, the record in this case contains no probative *364 document, such as a financial statement, balance sheet, or bankruptcy petition, confirming the financial condition of Maxicare during 1988. We find that petitioners have not carried their burden of proving that their stock in Maxicare had no liquidating value as of December 31, 1988. In addition, petitioners have failed to prove that Maxicare stock lacked potential value. The lack of potential value is established ordinarily only by some "fixed and identifiable event" such as bankruptcy. Padgett v. Commissioner, T.C. Memo. 1987-130. Petitioner points to Maxicare's bankruptcy in March 1989, in an attempt to establish the occurrence of an "identifiable event" and lack of potential value. Petitioner also cites Steadman v. Commissioner, supra at 378, in support of the position that "The continued operation of a corporation does not of itself prove value in its stock * * * [and] the occurrence of bankruptcy in one year does not preclude a finding, based upon corporate insolvency, of worthlessness of its stock in a prior year." Id. (citing Polizzi v. Commissioner, 265 F.2d 498 (6th Cir. 1959)). *365 Although these statements are, in and of themselves, correct, they are inapplicable to this case. The bankruptcy of Maxicare was not a liquidation under Chapter 7 of the Bankruptcy Code. Rather, Maxicare filed for protection under Chapter 11 of the Bankruptcy Code in pursuit of a reorganization of the corporation. Maxicare's bankruptcy filing in 1989 does not qualify as a "fixed and identifiable event" establishing the lack of potential value of Maxicare stock in 1988. Indeed, Maxicare continued to exist and operate even after the reorganization. Petitioner argues that because he did not exchange his shares for a pro rata distribution of the new stock of Maxicare, his original shares should be declared worthless in that the original shares now lack potential value. However, petitioner's decision not to exchange his shares pursuant to a plan of reorganization confirmed in 1990 does not establish that the shares became worthless in 1988. Petitioner further argues that the determination of whether a stock is worthless is subjective; in other words, if he believes his Maxicare stock is worthless to him, then he should be entitled to claim a loss under section 165(g). Petitioner *366 contends that his shares of Maxicare were worthless to him because the commissions to sell the stock exceeded the sales price of the stock. He also introduced the testimony of C. Rowe Harper (Mr. Harper) to whom he offered to sell his shares of Maxicare stock in December 1988. Mr. Harper testified that he opted not to purchase petitioner's stock based on advice from a third party that the stock was worthless. Petitioner argues that these points are clear evidence of the worthlessness of his shares. We disagree. First, petitioner cites no authority (and we are aware of none) for the position that the determination of worthlessness is wholly subjective. Second, petitioner presented no evidence apart from his own testimony, that the commissions on the sale of his stock would have exceeded the sales price thereof. Finally, with regard to Mr. Harper's testimony concerning the value of Maxicare stock, Mr. Harper was not shown to be an expert on stock valuation, nor to have personal knowledge of Maxicare's financial status. Also, a decision by one stockbroker not to buy or sell a particular stock does not establish the worthlessness of the stock. Padgett v. Commissioner, supra. *367 Based on the foregoing, we find that petitioners have not established that their 5,000 shares of Maxicare stock became worthless in 1988, and, accordingly, are not entitled to claim a loss for worthless securities under section 165(g) for that year. Respondent is sustained on this issue. III. Medical Expense Deduction
In her notice of deficiency, respondent determined that petitioners failed to report interest income of $ 459 and pension income of $ 12,698. As such, respondent disallowed $ 987 of petitioners' medical expense deduction based on the increase in petitioners' adjusted gross income and pursuant to section 213(a). Prior to trial, respondent conceded the issue of unreported interest income, and at no time herein did petitioners dispute respondent's adjustment for unreported pension income. Nonetheless, petitioners argue that respondent's disallowance of a portion of their medical expense deduction is incorrect. Section 213(a) limits a taxpayer's medical expense deduction to the amount of allowable medical expenses that exceed 7.5 percent of the taxpayer's adjusted gross income. Petitioners' adjusted gross income is increased by virtue of their failure to report *368 pension income, and, as a result, the limitation on their medical expense deduction must increase. Respondent is sustained on this issue. To reflect the foregoing, An appropriate order will be issued and decicion will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩