**O'BRIEN**

v.

**EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.**

No. 14954.

United States Court of Appeals,
Eighth Circuit.

April 21, 1954.

Rehearing Denied May 6, 1954.

See also 13 F.R.D. 475; 14 F.R.D. 141.

Thomas E. Hudson, Kansas City, Mo., (David T. Cavanaugh and Hudson, Whitcraft & Cavanaugh, Kansas City, Mo., on the brief), for appellant.

Henry I. Eager, Kansas City, Mo., (Henry G. Eager, Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., Leo D. Fitzgerald and Joseph L. Zehnder, New York City, of counsel, on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an action to recover double indemnity insurance for the alleged accidental death of plaintiff's husband. From a directed verdict for the defendant insurance company at the close of all the evidence, plaintiff appeals. The sole question for review is whether plaintiff established a prima facie case warranting its submission to the jury. It is conceded that the law of Missouri is controlling.

The policy provided for the payment of $10,000 upon the death of the insured. That has been paid and is not in dispute. In addition, the policy provided for the payment of an additional $10,000 in the event of accidental death, with certain qualifications. Whether those qualifications, only one of which is now involved, constituted an integral part of the definition of coverage for accidental death, or were exceptions to coverage, is given considerable importance by the parties. The definition of coverage and the qualifications appear in the policy in the following language:

"The Society agrees, subject to the provisions hereinafter stated, to increase the amount payable under said policy by a sum equal to the face amount thereof upon receipt of due proof, as herein required, that

"(1) the death of the Insured resulted from bodily injuries caused directly and independently of all other causes by external, violent and purely accidental means,

"(2) such death occurred within 90 days after the date of such injuries, and while said policy and this additional indemnity provision were in force and no premium thereunder in default, and before the anniversary of the Register date of said policy upon which the Insured's age at nearest birthday is 65 years,

"(3) such death was not the result of or caused by (a) self-destruction sane or insane; or (b) any drug, poison, gas or fumes, voluntarily or involuntarily, accidentally or otherwise, taken, administered, absorbed or inhaled; or (c) war, whether declared or undeclared, or service in any military, naval or air forces of any country at war, whether declared or undeclared; or (d) committing or attempting to commit an assault or felony; or (e) travel or flight in, or descent from, any aircraft of which the Insured shall be a pilot, officer or member of the crew or in which he shall be participating in aeronautic or aviation training or in training as a member of the mili-

tary, naval or air forces of any country, and

"(4) disease or illness of any kind, physical or mental infirmity, or medical or surgical treatment therefor, did not directly or indirectly cause or contribute to such death."

The insured was shot and instantly killed by Robert Jackson on the evening of October 27, 1951, at the home of Virginia Jackson, his wife, from whom he was temporarily separated. There were no witnesses to the shooting and what transpired immediately theretofore except the Jacksons and the deceased. The Jacksons' testimony constitutes substantial but not clear, positive and unequivocal evidence that the insured was at the time of his death committing an assault or a felony, or both, and that that was the cause and reason for the shooting. The husband, Robert Jackson, testified that he heard an outcry from his father's home some 300 feet away, saw something flit by a window, and got his father's revolver, went to the house, found the insured in bed with his wife, and opened fire. Several shots were fired, one of them taking effect in the hips of Virginia Jackson. She substantiated his testimony and testified that she was forced into the bedroom and onto the bed but does not remember what happened after that until the first shot was fired. There was some uncertainty on the part of both Jacksons concerning the number of times they had been married to each other and divorced, but both were sure that at the time in question they were married. There is no conflict in the evidence on that point.

The plaintiff offered in evidence the policy, made proof of death by gunshot wounds inflicted by another, and rested. A motion for a directed verdict was made and denied. The defendant then offered the evidence heretofore referred to, which is uncontradicted and which, as heretofore stated, showed that death occurred while the insured was committing an assault or felony or both. Plaintiff then offered some evidence tending to create the inference that robbery might have been the motive for the shooting. Whether that evidence, together with the other evidence on plaintiff's behalf, was sufficient to make out a submissible case in plaintiff's favor will be alluded to later. At the close of all of the evidence the trial court sustained defendant's motion for a directed verdict.

As stated, this case is to be determined upon principles of law consonant with the law of Missouri. Before considering the legal principles which, in view of the facts, must govern the propriety or impropriety of the directed verdict, it is necessary to keep in mind those double indemnity provisions of the policy, heretofore quoted, which give rise to the instant litigation. It is plaintiff's contention that her burden of establishing a submissible, prima facie case of accidental death was satisfied upon the mere showing of the insurance agreement and the violent death of the insured at the hands of another. Plaintiff insists that defendant had the burden of proving its "affirmative defense" that the insured was engaged in the commission of a felony at the time of his death. Thus it is argued, not without logic, that plaintiff's prima facie case and defendant's affirmative defense should have been submitted to the trier of the facts.

In a sense, the felony clause on which defendant relies constitutes, as in the case of suicide, a risk excepted from coverage. It is an "exception" in that the insurance company issuing the policy must be the party on whom the burden lies to bring forth the applicability of the "exception" so as to justify a denial of accidental death benefits. It is, however, the broad and unqualified assertion of this very principle which has caused misunderstanding among members of the bar and, on occasion, considerable confusion in the reported cases. Consequently, we review the controlling state authorities on the subject, in order to dispel the confusion and resolve the apparent conflict.

■ It is fundamental that in cases involving double indemnity benefits the burden of proving accidental death rests firmly upon the plaintiff seeking recovery. Laessig v. Travellers' Protective Ass'n of America, 1902, 169 Mo. 272, 69 S.W. 469; Griffith v. Continental Casualty Co., 1921, 290 Mo. 455, 235 S.W. 83; Aufrichtig v. Columbian National Life Ins. Co., 1923, 298 Mo. 1, 249 S.W. 912; Tillotson v. Travelers Ins. Company, 1924, 304 Mo. 487, 263 S.W. 819; Landau v. Pacific Mutual Life Ins. Co., 1924, 305 Mo. 542, 267 S.W. 370; Edwards v. Business Men's Assur. Co., 1942, 350 Mo. 666, 168 S.W.2d 82.

■ Just what are the evidentiary demands at trial necessary to meet this initial and never shifting burden is obscured considerably by a broad procedural utilization of legal presumptions. To illustrate more graphically, it is said that the burden of proving accidental death rests unswervingly upon the plaintiff, yet, due to recognized human propensities, we will presume that there is so strong a love of life in the human breast that death by one's own hand or by invitation is lacking, in the absence of evidence to the contrary. Sellars v. John Hancock Mutual Life Ins. Co., Mo.App. 1941, 149 S.W.2d 404. In this way a prima facie case of accidental death arises from the presumption against nonaccidental death, thereby satisfying plaintiff's burden of proof. Some courts have said that death by accident is not presumed, but merely follows, so to speak, from the presumption *against* suicide or death by invitation. Perringer v. Metropolitan Life Ins. Co., Mo.App.1951, 244 S.W.2d 607. But whether it is said an unexplained violent death will be presumed accidental, or, instead, a showing of violent death merely raises a presumption *against* suicide or invited injury, we think the difference is one without legal distinction. Suffice it to say, an unexplained death by violence is alone sufficient to make out a prima facie case of "accidental death", whether the presumption utilized is one in *favor* of death by accident or *against* death by suicide.

Sellars v. John Hancock Mutual Life Ins. Co., supra; cf. Perringer v. Metropolitan Life Ins. Co., supra. As stated in the Sellars case, 149 S.W.2d loc. cit. 405:

"* * * where no more is shown than the fact of the insured's violent death without the benefit of any of the explanatory circumstances, then such fact, considered in the light of the presumption of love of life which obtains in the case of the normal individual, is so repugnant to the idea of death by intention or invitation as to afford the presumption that death was by accident or accidental means, and thereby satisfy the plaintiff's initial burden of proof upon such issue."

In effect, plaintiff argues that once this "prima facie" case is established, the burden thereafter rests with defendant to prove its affirmative defense on the excepted risk which, whatever the testimony, creates a question of fact submissible to the jury. In so arguing, plaintiff ignores the legal import of the procedural presumption utilized which, unlike the substantive presumption in a res ipsa loquitur case, is not indestructably immune from the effects of refutatory testimony. The presumption of accidental death, while accomplishing the function of evidence in so far as plaintiff's initial burden of going forward is concerned, nevertheless is not evidence of the fact presumed and is merely a rule of procedure or "rebuttable legal presumption". It casts upon defendant the burden of going forward with substantial evidence to the contrary which, if adduced, destroys the procedural presumption on which plaintiff had relied as an evidentiary substitute. As so strikingly quoted by Justice Lamm of the Missouri Supreme Court in Mackowik v. Kansas City, St. J. & C. B. R. Co., 1906, 196 Mo. 550, 94 S.W. 256, 262, " 'Presumptions * * * may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts'." The significance of the procedural presumption relates then only to the burden of going forward with testimony, not to the burden of proof.

Though the burden of going forward may frequently shift during the course of a trial, the burden of proof remains upon the plaintiff to establish his substantive case.

■ Where a plaintiff's "prima facie" case vitally depends upon a rebuttable presumption, which is destroyed, then, too, must the "prima facie" case collapse with the presumption, thereby placing upon plaintiff the burden of going forward with evidence sufficient to avoid a directed verdict. Once the presumption is destroyed it is no longer a question of plaintiff's prima facie case versus defendant's affirmative defense, but rather has plaintiff made out a continuing prima facie case at all. Where a rebuttable procedural presumption has been utilized, as in the instant case, at most plaintiff makes out but a "rebuttable" prima facie case which is procedurally but not substantively significant.

With this in mind, we can more easily understand plaintiff's contention that the burden is upon defendant to show facts negating accidental death heretofore presumed. The pitfall lies, however, in confusing this burden, which is one of going *forward* procedurally, with the underlying substantive burden of *proof* which lies constantly with the plaintiff throughout the course of trial. In a limited sense, the insured's commission of a felony or even suicide is always a risk excepted from accident coverage, in that it is incumbent upon defendant initially to bring the issue forth. But the burden is one dictated by the presumption against death from misconduct which, when removed by substantial testimony, shifts the burden of going forward back to plaintiff to establish by evidence what had formerly been presumed. This is entirely consistent with the underlying burden of proof cast upon plaintiff to establish recoverable accidental death within the meaning of the policy.

■ In her brief appellant cites numerous cases holding that the burden of proving the death of the insured resulted from his committing a felony is an af-firmative defense resting with defendant. One of the more recent cases so holding is Terry v. Metropolitan Life Ins. Co., Mo.App.1947, 206 S.W.2d 724. Again we caution, such expression must not be lifted out of context. In Edwards v. Business Men's Assur. Co., supra, the Supreme Court of Missouri carefully considered numerous decisions on the subject, including Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S.W. 1128, loc. cit. 1131, wherein it had been held:

"No legal proposition is more firmly established than that where the act which caused the death may be either accidental or suicidal the burden is upon the insurer to establish the fact of suicide by a preponderance of the evidence, for the presumption arising from the love of life, which is created for its preservation, is, like every natural law, always within the contemplation of the courts."

Also cited in the Edwards opinion were Kahn v. Metropolitan Casualty Ins. Co., Mo.Sup., 240 S.W. 793, and Andrus v. Business Men's Accident Ass'n, 283 Mo. 442, 223 S.W. 70, loc.cit. 74, 13 A.L.R. 779, wherein the court had held:

"The burden was on the defendant to *prove* that the death under such circumstances was intentional, and not accidental; that is, the burden would be upon the defendant, in a case of suicide, to prove that the insured was sane, and committed the act which took his life with the intention of committing suicide." (Emphasis supplied.)

Though admitting that the burden was upon the defendant to show that death resulted from circumstances constituting an admitted "excepted risk in the policy," the Missouri Supreme Court concluded in the Edwards case, speaking through Commissioner Dalton, 168 S.W.2d loc.cit. 91:

"The statement, supra, from the Reynolds case was construed in the Brunswick case [Brunswick v. Standard Accident Ins. Co.], supra [278 Mo. 154], 213 S.W. 45, 50, 51 [7 A.L.R. 1213] to mean the *burden of going forward with the evidence.* The statement, supra, from

the Kahn case also refers to the *burden of going forward with the evidence.* * * If the statement, supra, from the Andrus case was not intended to mean *burden of going forward with the evidence,* it has been overruled by the Griffith [Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043] and other cases, supra." (Italics supplied.)

Though most of the cases on the question of presumption involve the factual element of suicide, we are convinced that a "death while in the commission of a felony" clause involves identical considerations. In either event, such occurrences are risks which the insurer "excepts" from coverage and, in that sense, the burden is always upon the insurer to come forward with evidence to rebut the procedural presumption of accidental death. But the burden of *proving* accidental death remains upon plaintiff. With the presumption "disappearing in the sunshine of actual facts", plaintiff must then come forward and, pursuant to his ever-present burden of proof, show that death was accidental by proving the insured was *not* engaging in the commission of a felony. In effect, this means that the insured's misconduct is an "affirmative defense" (although the term is misleading) for the purpose of going forward with evidence, but once that "defense" is raised by defendant going forward with evidence, it is then incumbent upon plaintiff to prove by evidence that the death comes within the meaning of "accident" as used in a policy specifically excluding death from suicide or felonious conduct. Sellers v. John Hancock Mut. Life Ins. Co., supra; cf. Perringer v. Metropolitan Life Ins. Co., supra.

In the instant case appellee proffered the direct testimony of Robert and Virginia Jackson relating the manner of and circumstances surrounding the death of the insured. In view of the authorities cited herein, we are convinced that such testimony amply destroyed any presumption of "accidental death" theretofore arising from plaintiff's bare showing of death by violence. The only question remaining is whether the state of the evidence, when viewed in light of plaintiff's underlying burden of proof and absent presumptions, justified a directed verdict. The test to be used has been variously stated. In the Sellars case, the court held, 149 F.2d loc.cit. 406:

"When contrary facts appear, the presumption [of accidental death] disappears; * * * if the plaintiff, in rebuttal, adduces countervailing evidence supporting the conclusion that death resulted from a cause within the coverage of the policy, then the ultimate question is one of fact to be determined by the jury as in the case of any other factual issue."

By the foregoing it is not meant that in an action of this kind *any* rebuttal testimony, however feeble, will suffice to avoid a directed verdict on behalf of the defending insurance company. The "scintilla of evidence" doctrine is no longer the law of Missouri. Hardwick v. Kansas City Gas Co., 1944, 352 Mo. 986, 180 S.W.2d 670. To hold otherwise would be to ignore a plaintiff's burden to establish his case, no longer aided by presumption. Unless the plaintiff produces some substantial evidence negativing the excepted misconduct and thereby brings the death within the coverage of the policy, a directed verdict will be proper. Ray v. Mutual Life Ins. Co. of New York, Mo.App.1949, 218 S.W.2d 986.

In the instant case the only positive evidence proffered was that at the time of his death the insured was committing an assault or a felony. It is only by inference and innuendo that plaintiff suggests that the insured may have been the victim of robbery and foul play. Although plaintiff testified that the insured had some $200 on his person the morning of the fatal day, it would be patently improper to assume that the absence of this money from his personal effects proves thievery claimed his life. To do so we would have to infer that not only did O'Brien have this money with him when he called at the Jackson residence many hours later, but we would have to infer further that theft of this purportedly missing money brought about this

tragedy. It requires the citation of no authority that such an inference upon an inference is entitled to no evidentiary consideration. The fact, as testified to by plaintiff, that the insured's trousers were missing is of no substantial evidentiary significance in furthering plaintiff's burden of proving accidental death.

 Viewing the circumstances surrounding the insured's death most favorably to plaintiff's hypothesis, we have at most inferences arising which are as consistent with a theory of death while in the commission of a felony as with death by accident. Though plaintiff's initial burden of going forward with the evidence was obviated by a procedural presumption of accidental death, this presumption was destroyed by the positive, substantial testimony of the two Jacksons, thereby casting upon plaintiff the burden, ab initio, of going forward with evidence sufficient to sustain her unshifting and underlying burden of proof on the issue. With this in mind, plaintiff offers only the violent death of the insured from gunshot wounds received at the Jackson residence, and the absence of money, eyeglasses, and certain items of clothing from the personal effects of the insured. Can it be reasonably said that such facts, assuming them to be true, even approach to support plaintiff's burden of proof that the insured was not in the commission of an assault or felony? We think not. The inferences to be gleaned from such evidence are as consistent with defendant's theory of death (which is supported by positive testimony) as they are with plaintiff's. As this court said in New York Life Ins. Co. v. King, 93 F.2d 347, 353:

" * * * evidence which is equally consistent with two hypotheses, under one of which a defendant is liable, and under the other of which it is not liable, supports neither hypothesis."

Cf., Christianson v. Metropolitan Life Ins. Co., Mo.App.1937, 102 S.W.2d 682; Stafford v. New York Life Ins. Co., Mo. App.1952, 248 S.W.2d 76. Consequently, we are convinced the trial court below properly directed a verdict for the defendant.

In view of the foregoing considerations and their decisive effect upon the propriety of the trial court's action, it is unnecessary to consider other grounds advanced by defendant in support of the judgment.

Judgment affirmed.