Frances DI PAOLI, a/k/a Providenza Di Paoli, Plaintiff-Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY, a Corporation, Defendant-Respondent.

No. 31376.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1964.

James & Hasler, John D. Hasler, Edward J. Wynne, St. Louis, for plaintiff-appellant.

Lashly, Lashly, Rava, Hyndman & Rutherford, William I. Rutherford, Paul B. Rava, Oliver J. Miller, Paul R. Moody, St. Louis, for defendant-respondent.

ANDERSON, Judge.

This is an action brought by Frances Di Paoli to recover accidental death benefits under a policy of life insurance issued by defendant to plaintiff's deceased husband, Luigi Di Paoli. Plaintiff was the named beneficiary in said policy. There was a verdict for plaintiff in the amount of $1,000, the amount alleged to be due on the policy together with interest thereon in the sum of $155.00. Defendant in due time filed its motion for new trial together with a motion for judgment in accordance with its motion for a directed verdict. Thereafter, the court sustained defendant's motion for judgment in its favor, and at the same time entered an order that if said judgment be reversed by an appellate court defendant's motion for new trial was denied. From the judgment, plaintiff has appealed.

The face amount of the policy was $1,000, and contained a provision that an equal amount was payable in the event of "death by accidental means" as defined in the policy. The insured died October 6, 1959, while the policy was in full force and effect. The insurance company paid one

thousand dollars, the amount of the life coverage, but refused liability for the accidental death benefit.

The petition alleged that on the 6th day of October, 1959, the said Luigi Di Paoli died as a result of a violent physical assault inflicted upon him on the 22nd day of September, 1959.

Defendant's answer pleads the "accidental means" provision of the policy and avers that the death of the insured was not accidental within the policy provisions, since it resulted from his own misconduct, to wit, while he was an aggressor in a dispute wherein he was making threatening gestures with a gun.

Plaintiff's evidence consisted of the testimony of Dr. Martin J. Glaser who performed a postmortem examination of the insured's body on October 6, 1959; the hospital records of the City Hospital, the hospital records of the Missouri Pacific Hospital and the testimony of plaintiff's son. The testimony of the son throws no light on the cause of insured's death.

Dr. Glaser testified the insured died of a fractured skull which had caused profuse hemorrhage within the membrane that covered the brain; that he found four scars 3½ inches in length above the ear extending to the midline and backward. The scars were freshly healed and showed about 25 or 30 suture marks. The entire brain was covered with blood, mostly clotted, and a considerable clot of blood extending down into the base of the brain from the parietal region to the occipital region and into the spinal cord. He further testified that there was a linear crack in the skull bone extending from about the middle portion of the parietal bone to the occipital, with considerable displacement or separation laterally, but, he could not determine whether it was caused by a single blow or multiple blows to the head. The scars ran vertically up the side of the head.

The admission record of the City Hospital showed that insured was admitted there on September 22, 1959. It also revealed the patient had multiple abrasions and a laceration of the scalp which went down to the bone exposing the cranial vault in several places. Under anesthetic sutures were applied.

Insured, who was an employee of the Missouri Pacific Railroad, was thereafter removed to the Missouri Pacific Employees Hospital. The record of that hospital was offered in evidence by plaintiff. It showed that Di Paoli was born September 6, 1889; that he was transferred on September 23, 1959, from the City Hospital, to Missouri Pacific Hospital; that he had a head injury; that x-rays revealed a badly comminuted fracture together with multiple lacerations of the left parietal, sphenoid and occipital portions of the skull; a one quarter inch depression of the left temporal and inferior parietal region extending to the base of the skull, and that on October 5, 1959, the patient expired.

John S. Farmer, defendant's witness, testified that during the evening of September 22, 1959, he was the bartender at 2350 North Market. At about 10:15 or 10:20 p. m., while he was talking to a customer, John Lindner, a stranger (later identified as the insured Luigi Di Paoli) entered the bar room, walked beyond Lindner, then turned around and without prior conversation pulled out a gun, cocked it and pointed it at Farmer, and threatened to kill him, saying "I'll kill you" several times. He further testified that Lindner then began talking to Di Paoli in an effort to persuade him from using the gun, whereupon Di Paoli turned and pointed the gun toward Lindner. When this occurred, he (Farmer) came from behind the bar to a position behind Di Paoli intending to relieve the latter of the gun, but just as Farmer got in back of him Di Paoli turned on Farmer with the gun. Farmer then struck Di Paoli with his left fist around the temple. Di Paoli fell to the floor and in the process of falling struck his head either on the bar rail or a rung of a bar stool. As he was falling, Farmer relieved him of the gun. Farmer

called the police immediately thereafter, and then laid the gun on a table where it remained until the police arrived. Farmer stated that he did not have anything in his hand when he struck Di Paoli; that Di Paoli was 15 to 16 inches away when he hit him; that Di Paoli fell hard; and that after he fell his head was eight to ten inches away from the rail which runs at the foot of the bar. On cross-examination, Farmer said he told the police when they arrived that Di Paoli probably could have hit the rung of the bar stool as he went down, although he did not know what Di Paoli struck when he fell.

John Lindner testified that on September 22, 1959, he was a customer at the North Market Bar, when he heard someone enter the bar and then saw this stranger, Di Paoli, a couple of feet to his right with a gun in his hand talking to the bartender. He was pointing the gun at the bartender. Di Paoli was about 1 to 2 feet from the edge of the bar. Lindner further testified he started talking to Di Paoli and Farmer came around the bar to a position behind Di Paoli and hit him. Di Paoli then went down to the floor, falling close to the bar. He further stated that when Di Paoli had the gun pointed at him, Di Paoli kept saying, "I'll kill you" and spoke to Lindner in some foreign tongue which Lindner could not understand. He further stated that when Di Paoli went down after being struck by Farmer, the table and chairs, which were about 4 feet away, were shoved and moved about. Lindner further testified that he had been at the bar since seven or eight o'clock that evening and had during that time 6 or 7 drinks of whiskey, but was not intoxicated. However, he was feeling his drinks. On cross-examination, Lindner said he did not actually see the blow struck by Farmer; that he saw Farmer moving from behind the bar and all of a sudden Di Paoli was on the floor and the table and chairs were rocking. He further stated that Di Paoli brushed against him as he went down, and that he told the coroner's jury, when asked what Di Paoli hit when he went down, "He never hit nothing I seen."

St. Louis police officer, Phillip Dwyer, a detective, attached to the Homicide Section, testified that Farmer, who was arrested on suspicion of manslaughter in connection with the death of the insured, had never been tried on that charge. He further stated that the gun turned over to the police the night of the September 22 incident was a fully loaded .38 five shot revolver and that the history of the gun had not, to his knowledge been traced.

Appellant contends that the court erred in entering judgment for defendant for the reason that the pleadings and evidence presented an issue of fact triable by a jury. Specifically it is urged that a prima facie case of accidental death was shown upon proof of violent death, which prima facie case was not destroyed by defendant's evidence which was calculated to show that insured died as a result of injuries sustained as a result of being knocked to the floor by a blow received in an encounter with John S. Farmer in which insured was the aggressor. Defendant admits that upon proof by plaintiff that insured met a violent death a presumption arose that his death was brought about by accidental means, but contends that such presumption, being purely procedural, disappeared when defendant offered its evidence showing the insured was the aggressor in an affray which terminated in his death, and that plaintiff, therefore, failed to sustain the burden of proof which the law casts upon her.

▮ In suits on policies of accident insurance where no more is shown than a violent death, a presumption arises that said death was brought about through accidental means. Sellars v. John Hancock Mutual Life Ins. Co., Mo.App., 149 S.W.2d 404; Gilpin v. Aetna Life Ins. Co., 234 Mo. App. 566, 132 S.W.2d 686; Ieppert v. John Hancock Mutual Life Ins. Co., Mo.App., 347 S.W.2d 436; McKeon v. National Casualty Co., 216 Mo.App. 507, 270 S.W. 707.

The presumption is purely procedural and is destroyed by substantial evidence controverting the presumed fact. If there is positive, clear and undisputed evidence that insured's death did not result from injuries sustained through accidental means, there is no issue for the jury, and the matter should be resolved by the court as one of law. The presumption may not be weighed as evidence. Sellars v. John Hancock Mutual Life Ins. Co., Mo.App., 149 S.W.2d 404. Ieppert v. John Hancock Mutual Life Ins. Co., Mo.App., 347 S.W.2d 436. And where insured as the aggressor voluntarily engages in an affray with another person, or assaults or threatens another with a deadly weapon which takes on the aspect of a threatened deadly encounter, he must be deemed to have invited resistance of such force as likely to put him in danger of death or bodily harm. Such resistance will be regarded as the natural and probable result of voluntary exposure to danger which ought to have been foreseen, and if it results in death or bodily harm, such injury or death cannot be regarded resulting from accident within the provisions of a policy insuring against death or injury by "accidental means." Podesta v. Metropolitan Life Ins. Co., Mo.App., 150 S.W.2d 596; Perringer v. Metropolitan Life Ins. Co., 241 Mo.App. 521, 244 S.W.2d 607.

But appellant says that defendant's evidence was not clear, positive and substantial, and was therefore not sufficient to destroy the presumption of death by accidental means which arose upon proof of violent death. In support of this contention appellant points out certain differences in the testimony of the witnesses concerning certain details of the occurrence and contradictory statements by the witness with reference to these details, which appellant says raised a question as to the truthfulness of the testimony and thus presented a question of credibility to be resolved by the jury. We have read and re-read the testimony and cannot agree that such is the case. To be sure, there were differences as to certain matters, but they were in reference to minor and unimportant details. As to all important matters the testimony of defendant's witnesses was harmonious and in full accord. Considering the fact that the lives of the two men were threatened and that the action taken by Farmer to relieve them of their peril had to be and was a rapid process involving considerable danger and excitement, it is not strange to find the record disclosing some minor discrepancies in their testimony. If it did not, there would be more reason for doubting their veracity. On all matters of consequence, defendant's evidence stood unimpeached, with no room for reasonable controversy in regard to the circumstances under which insured received the injuries which caused his death. Those circumstances show no liability under the policy.

The judgment is affirmed.

WOLFE, Acting P. J., and R. K. ELLIOTT, Special Judge, concur.