John **CONNIZZO**, Plaintiff-Respondent,

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 35604.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

March 4, 1975.

Kortenhof & Ely, Joel D. Monson, Frank E. Strzelec, St. Louis, for defendant-appellant.

Deeba, DeStefano, Sauter & Herd, James B. Herd, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant appeals from a judgment entered by the Circuit Court of the City of St. Louis upon a jury verdict that awarded plaintiff a $9500 recovery under a double indemnity provision contained in a group insurance contract, death allegedly occurring by virtue of an "accident" within the policy terms.

We hold that the court erred in failing to sustain defendant's motion for a directed verdict at the close of all the evidence because plaintiff's evidence failed to make a submissible case; and, accordingly, reverse the judgment with instructions to the trial court to set aside the judgment and enter judgment for the defendant.

The deceased, John Phillip Connizzo, plaintiff's son, was insured under a group insurance policy issued by defendant to McDonnell-Douglas Corporation. The policy contained a standard double indemnity provision with an express limitation on recovery to the effect that:

"Benefits shall not be payable under the Accidental Death and Dismemberment Insurance provisions of this policy for any loss even though the proximate and precipitating cause of the loss is accidental bodily injury, which arises out of or is contributed to in any way by any of the following:

\* \* \* \* \* \*

"5) participation in, or in consequence of having participated in, the commission of an assault or felony."

The deceased married Rita Marie in 1965; however, in February, 1971, Rita Marie left John Phillip to live with her parents, Mr. and Mrs. Robert Zurbriggen. At the time Rita Marie left, their daughter Sherry, age 4, went with her. According to Rita Marie's testimony she left the de-

ceased because he had a violent temper and had struck both her and Sherry on several occasions; that after the deceased threatened to hurt Sherry his visitation privileges were restricted to the Zurbriggen home and that subsequently she filed for a divorce.

On July 23, 1971, Rita testified that she heard a lot of hollering, some banging on the door, the door bell ringing, and some screaming; that she ran into the hallway and saw the deceased beating her father, Robert Zurbriggen, on the head with his fist; that the deceased ran toward her, grabbed her, put a knife point to her chest and said that he was going to kill both her and Sherry and that thereafter she heard shots.

Robert Zurbriggen testified that he, his wife, Dorothy; Rita Marie, his daughter; and Debby, his daughter-in-law, were eating supper when the door bell rang and that he heard a loud hammering at the door; that he did not know where Debby was at trial time, and that Dorothy, his wife had died prior to the trial; that he ran to the window and saw the deceased's green Mercury parked outside, and he took a .38 caliber pistol out of his dresser which he put into his hip pocket. He told Dorothy to call the police because two weeks before, the deceased and his brother had "stood out on the front lawn of my house and said 'Come on out, you bunch of s——— of b———. We'll kill the whole g——— d——— family.'" When he opened the door, the deceased pounced upon him like a cat, struck him several times in the face, and that he also struck the deceased; that the deceased then ran past him into the hall at which time he saw him with a knife on Rita Marie, and deceased said, "'I'm going to kill the whole g——— d——— bunch of you.'" Thereafter, the deceased pushed Rita Marie into a hall out of his sight; that thereafter the witness ran through the living room to the end of the hall where he saw the deceased and Rita Marie; that he shot the deceased several times to protect his daughter's life.

Officer Thomas Burke testified that he was notified at 5:17 P.M. on July 23, 1971, of a family disturbance at the Zurbriggen home; that when he arrived at 5:20 P.M., he saw a knife lying in the hallway. The overall length of the knife was 10¾ inches, with a six-inch blade; and that the deceased's body was lying partly in a bedroom and in the hallway. He also said that he had previously advised a member of the Zurbriggen household to call the police if the deceased created any problem. Another officer testified that there was a swollen mark or knot over Zurbriggen's right eye.

At the trial, plaintiff introduced evidence of the existence of a current, valid policy and medical testimony that the deceased, John Phillip, died by violent means. Defendant argued, as an affirmative defense, that the death occurred while the deceased was in the act of committing an assault with a deadly weapon, thereby assuming the risk of being killed and precluding recovery under the policy. Plaintiff denied the commission of an assault or felony by the insured. At the close of defendant's evidence, plaintiff presented rebuttal evidence consisting of the testimony of a police officer as to the disposition of certain items found at the scene, the testimony of several co-workers of the deceased establishing that the deceased was never known by them to own a knife but was known by them to wear glasses and several photographs taken at the scene.

At two points during the trial, the defendant moved for a directed verdict on the grounds that the plaintiff had failed to make a submissible case. The first motion came at the conclusion of the plaintiff's case in chief; the second, at the close of all of the evidence. Both motions were denied and the case was sent to the jury which returned a verdict for plaintiff.

■ The proper procedural approach in a double indemnity action was thoroughly discussed by the 8th Circuit Court of Appeals in O'Brien v. Equitable Life Assur.

Soc. of United States, 212 F.2d 383 (8th Cir. 1954), wherein it was stated that in a double indemnity action, the law affords the plaintiff the use of a rebuttable presumption. Establishment of death by violent means raises a presumption of death by accident [O'Brien v. Equitable Life Assur. Soc. of United States, supra]. See also Di Paoli v. Prudential Ins. Co., 384 S.W.2d 861 (Mo.App.1964) and Lindemann v. General American Life Ins. Co., 485 S.W.2d 477 (Mo.App.1972). In the present case when plaintiff proved the fact of the deceased's death by external, violent means by the medical testimony, the presumption arose that the deceased met his death by accidental means.

■ But the presumption of accidental death simply accomplishes the function of evidence insofar as plaintiff's initial burden of going forward with the evidence. The use of the presumption casts upon the defendant the burden of going forward with evidence to counter the presumption, O'Brien v. Equitable Life Assur. Soc. of United States, supra, 212 F.2d at 386; Ward v. Penn Mut. Life Ins. Co., 352 S.W.3d 413 (Mo.App.1961). The defendant's motion for a directed verdict at this point in the trial was, therefore, properly overruled because of the legal effect of the presumption.

To meet the burden of going forward with the evidence in the present case, the insurance company introduced the testimony of Zurbriggen and Rita Marie, two of the surviving witnesses to the event. Their testimony established that the deceased assaulted Zurbriggen, brandished a knife while making death threats to Rita Marie and that Zurbriggen killed the insured, in a defense of his daughter's life and his home. Defendant asserts that this evidence was sufficient to rebut the presumption relied upon by the plaintiff and if the presumption was rebutted, the burden of proof rested squarely on the plaintiff to produce evidence that death was accidental.

At various times, the courts have impugned, praised and confused the effect of presumptions. One classical theory of presumptions would treat them as bursting bubbles. Under this theory, the trial judge need only determine that the evidence introduced in rebuttal is sufficient to support any finding contrary to the presumed fact, McCormick, Evidence, 2d Ed., § 345. In some cases, the bubble may be rather fragile. In Missouri, the presumption of accidental death seems to have been treated as a modified bursting bubble; that is, the bubble may have a certain amount of elasticity. That elasticity is a function of the quantum of proof which the defendant must introduce to overcome the presumption of accidental death. In O'Brien v. Equitable Life Assur. Soc. of United States, supra, the court required "substantial" evidence to refute the presumption of accidental death. In Di Paoli v. Prudential Ins. Co., 384 S.W.2d 861 (Mo.App. 1964), the court required "positive, clear and undisputed" evidence by the insurer to defeat the presumption. In Lindemann v. General American Life Ins. Co., 485 S.W.2d 477 (Mo.App.1972) the court found the insurance company's rebuttal lacking where it relied on a "mere conjecture" to counter the presumption.

In the present case, under standards set forth in either the O'Brien or Di Paoli cases, the evidence introduced by the defendant was sufficient to rebut the presumption. This evidence consisted of the eyewitness testimony of two of the survivors of the incident. The testimony was consistent as to all important matters, Di Paoli v. Prudential Ins. Co., supra, 384 S.W.2d at 865. Both witnesses testified that the insured exhibited a weapon in an angry or threatening manner and that the insured was shot as he chased Rita Marie down a hallway with a knife.

■ A presumption does not purport to be any kind of evidence of what actually occurred. It is simply a legal formula, sometimes based on public policy, some-

times on a belief that the ultimate fact presumed is a natural inference of the facts giving rise to the presumption. As previously indicated, the presumption of accidental death merely shifts the burden of going forward with the evidence; it does not realign the burden of proof in a double indemnity action. That burden, at all times, rests on the insured, Lindemann v. General American Ins. Co., supra; O'Brien v. Equitable Life Assur. Soc. of United States, supra.

■■ Once the presumption is rebutted, the plaintiff must then proceed to make a submissible case of accidental death without resort to the presumption because the presumption is purely procedural and is destroyed by substantial evidence controverting the presumed facts, Sellars v. John Hancock Mut. Life Ins. Co., 149 S.W.2d 404 (Mo.App.1941); Ieppert v. John Hancock Mut. Life Ins. Co., 347 S.W.2d 436 (Mo.App.1961). Research has disclosed no cases clearly defining the elements of proof of accidental death in a case where the plaintiff does not have the benefit of the presumption. Some guidelines may, however, define the considerations of the sufficiency of plaintiff's evidence to withstand a motion for a directed verdict.

■■ On a motion by defendant for a directed verdict, all of defendant's evidence is to be ignored except to the extent that it is documentary or supportive of plaintiff's argument, and plaintiff's evidence is to be viewed as true along with all reasonable inferences arising from that evidence. The case is not to be withdrawn from the jury unless reasonable minds could not differ on the proper disposition of the case, Joiner v. Kurt's Chip-A-Way Park, Inc., 510 S.W.2d 773 (Mo.App.1974); see § 510.280, V.A.M.S. Applying that standard to the present case, we are still left with a rather sparse offering by the plaintiff.

■ The presumption itself cannot be regarded as evidence, Ward v. Penn Mut. Life Ins. Co., supra; O'Brien v. Eq-

uitable Life Assur. Soc. of United States, supra, 212 F.2d at 386; Sellars v. John Hancock Mut. Life Ins. Co., supra. Yet, facts, which give rise to the presumption, can be regarded as evidence. In the present situation, those facts giving rise to the presumption are the fact of the existence of a policy and the fact of a death by violent means. In rebuttal, plaintiff adduced additional evidence as to the disposition of certain items found at the scene and evidence that the deceased wore glasses and was not known by his fellow employees to own a knife. These isolated bits and pieces of evidence are the sum total of plaintiff's case. There was no evidence, for example, of a neighbor who happened to be looking out the window and saw the incident or any evidence as to any kind of devious plot to assassinate the deceased. No reasonable inferences can be drawn from any or all of these facts to lead to a conclusion that the insured died as a result of an accident. Granted that a submissible case may be made out by circumstantial evidence, Ward v. Penn Mut. Life Ins. Co., supra, 352 S.W.2d at 422, but that circumstantial evidence must be cohesive enough to establish a plausible theory of recovery.

Here it is difficult to isolate the plausible theory of the plaintiff. At oral argument, the plaintiff's lawyer attempted to characterize the events of July 23, 1971, as an assassination. The only evidence introduced by the plaintiff which is even remotely related to such a theory is the fact that the death of the insured occurred as a result of gunshot wounds in the back. It seems that the leap from that single fact to a theory of recovery is beyond the scope of reasonable inferences.

■ Here the uncontroverted evidence is that John Phillip pushed his way into the Zurbriggen home, struck Zurbriggen about the head, chased and grabbed Rita Marie and held a knife to her chest while voicing his intent to commit murder. Thereafter, in a space of minutes he was unfortunately fatally wounded. The policy provision specifically excluded "accidental

death" benefits under such circumstances. Accordingly, we hold that after defendant offered its evidence showing the deceased met his death while participating in, or in consequence of having participated in, the commission of an assault or felony, that plaintiff failed to sustain his burden of proof which the law cast upon him.

Judgment reversed with instructions to the trial court to sustain defendant's motion for a directed verdict and to enter judgment for the defendant.

SIMEONE, P. J., and GUNN, J., concur.