STATE of Missouri, Respondent,

v.

Charles Elliott SANDERS, Appellant.

No. 49555.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Thomas F. Eagleton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Commissioner.

Defendant was charged with and found guilty of the offense of burglary in the second degree and his punishment fixed by the jury at imprisonment in the penitentiary for a period of two years. See Sections 560.070 and 560.095(2), RSMo 1959, V.A.M.S. He has appealed from the judgment entered upon said verdict.

The building here involved was located at 1316 East 10th Street, Kansas City, Missouri, and was occupied by the Salvation Army in the operation of a mercantile business. Robert Simmerson testified that he was manager of the store; that on November 13, 1961, he "locked up" at 4:30 in the afternoon and at that time saw that all the windows were closed and locked; that when he opened the store the next morning he discovered that a rear window had been broken out, and that the cash register was open and the change drawer had been removed therefrom and placed on the counter. He identified a shirt and cap found near the coke machine, and also certain photographs of the interior of the building which will be hereinafter referred to. This witness further testified that a box of small tools which he kept under the counter were found near the coke machine. Upon cross-examination he stated that as far as he knew nothing had been taken from the building.

Carl H. Schwarz testified that he was a night watchman employed by the Salvation Army for a group of buildings occupied by it. He stated that on the date in question he checked the doors and windows of the store building at 5:30 p. m. and again at 10:30 p. m. and found everything in order; that he went back about 12:45 a. m. on November 14, after learning that the police had been called to the store building, and found that a pane had been broken out of

a window on the east side of the building, and that there was an open window on the west side thereof; that the police were then inside the building and had the defendant in custody.

Mary F. Gooch testified that she lived next door to the store building in question, except that there was a parking lot between the two buildings; that on the early morning of November 14, she was watching the "late show" on television when she heard a noise outside which sounded like someone hammering; that she looked out the kitchen window and saw a man beating on a car with what appeared to be a crowbar; that this person then went over and broke out a window in the Salvation Army building and crawled into the building; that she then awakened her husband and had him call the police who arrived almost immediately; that a nearby street light enabled her to get a good look at this man and she identified him as the defendant; that she had seen him on three or four previous occasions in the building in which she lived.

Another witness, Corporal Calvin Kidwell, testified that he was with the canine unit of the Kansas City Police Department; that he arrived at the building in question, with his dog "Silver War," shortly after the police were called; that he found a broken window on the east side and then called inside, "If anyone is in there, come out, or I'll turn the dog loose"; that in about two minutes the defendant was seen coming out of the alley and was apprehended by the officers present.

Marcus Boger, another member of the police force, testified that he answered a call to investigate the alleged burglary at the Salvation Army store; that he checked the building and found that a window had been broken on the east side of the building, and that a short time later he arrested the defendant as he came out of the alley; that they then went into the building and he saw that the change drawer had been removed from the cash register. Another policeman testified that defendant admitted that the cap found in the building belonged to him but explained that it must have fallen off of his head after the police had taken him into the building.

After defendant was arrested and taken to the police station he was interrogated by detective William Austin and his statement, so obtained, was reduced to writing and signed by him. That statement was admitted in evidence as State's exhibit 4 and contained, in part, the following: "Question: Charles, in your own words, tell me how you committed this burglary. Answer: * * * As I was walking by the Salvation Army As-Is Store, 1316 East 10th Street, next to the apartment building where Jinks lives, at about 12:20 a. m. on 11-14, 1961, I decided to break in and see if I could find some money. I picked up a rock that I found in the parking area by the northeast corner of the store and tapped the window, which was interwoven with chicken wire, until I had a place broken in it where I could shove my foot through and kicked the rest of the window out and crawled through into the building. After I got inside I walked over to a coke machine which was in the same room where I broke in, and as I started to break into the coke machine I heard a car pull up at the front of the alley by the window where I broke in. I ran to the window and looked out and saw it was a police car. I then ran to the front of the building to see if I could find another way out, and I saw another police car. I then ran to the window on the west rear side of the building and raised the window and crawled out into the alley, and walked through the alley to 10th Street, and west on 10th Street to where I was arrested approximately 50 feet west of the building I had broken into." No evidence was offered by defendant in the trial.

The defendant has not filed a brief in this court and it therefore becomes our duty to examine the assignments in his motion for new trial.

We will first consider the assignment that "the court erred in denying defense counsel's motion for judgment of acquittal at the close of the State's evidence because as a matter of law the State's evidence created a reasonable doubt to the defendant's guilt." This contention is clearly without merit. The foregoing detailed statement of the facts contains ample evidence from which a jury could reasonably have found, beyond a reasonable doubt, that defendant broke into and entered the building in question, in which goods and merchandise were kept, with intent to steal. Those findings include the essential elements of the offense of burglary in the second degree and would be sufficient to support the submission herein. This assignment is accordingly ruled adversely to defendant.

The assignment "that the verdict is against the weight of the evidence" has been repeatedly held to be too general and therefore insufficient to preserve anything for our review. State v. Herron, Mo.Sup., 349 S.W.2d 936.

The final assignment in the motion relates to alleged errors in the admission of evidence offered by the State. It is first said that the court erred in admitting photographs that were not properly identified. The two photographs admitted in evidence were evidently taken by the police. One showed the interior of the store, and particularly the cash register with the change drawer removed therefrom and placed on the counter. In regard to that photograph the manager of the store testified as follows: "Q. And does this photograph fairly and truly and accurately portray the scene as you remember it on the morning of November 14, 1961? A. Yes, sir." The other photograph was of the window that had been broken on the night of the burglary. Mr. Simmerson also testified that it fairly and accurately portrayed that window. Although this witness did not take the photographs, and was not present when they were taken, he was very familiar with the premises and his testimony that they fairly and accurately portrayed the objects shown therein was a sufficient identification and they were properly admitted in evidence. State v. Duncan, Mo.Sup., 316 S.W.2d 613 [14].

Defendant also assigns error in that "a copy of a signed confession was introduced, over defendant's objection, rather than the original." The objection at the time the exhibit was offered was that it was "a carbon copy and not the best evidence." The exhibit has been copied in the transcript but defendant has not seen fit to cause the exhibit itself to be deposited here. However, it plainly appears from the transcript that the so-called carbon copy which was admitted had been signed by the defendant. Therefore, while the typing in the exhibit may have been a carbon copy (there is no proof of that fact), it became a duplicate original upon being signed by defendant and was properly admitted in evidence. In the case of State v. Trice, 338 Mo. 744, 92 S.W.2d 135, 136, this court ruled a similar contention adversely to the defendant, as follows: "The evidence, however, disclosed that the statements, alleged to have been made by appellant, were written with a typewriter, in the form of questions and answers, at the time the statements were made; that a number of carbon copies were made at the same time; that appellant signed the carbon copy which was introduced in evidence. Reference is usually made to such writings as carbon copies, when in fact they are duplicates, and, when signed by the parties, are admissible in evidence." This assignment is without merit and is ruled against defendant.

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

COIL, C., not participating.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All of the Judges of the Division concur, and HUNTER, Special Judge, concurs.