Alvina Ann LONG, Appellant,

v.

Edna M. HOOKER, Respondent.

No. 53765.

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Thomas J. Stephens, Jerold L. Drake, Stephens & Drake, Grant City, for appellant.

Somerville, Cleaveland & Macoubrie, Ronald L. Somerville, Chillicothe, for respondent.

HOLMAN, Judge.

In this action plaintiff sought to recover damages in the amount of $100,000 for personal injuries sustained in an automobile collision. Plaintiff was riding in a car being driven by her husband. The collision occurred on Route K in Livingston County, Missouri. The Long car was proceeding east and the car driven by defendant was going west. The two cars collided when defendant started to make a left turn into the driveway of her home which was located on the south side of the highway. A trial resulted in a verdict for plaintiff in the sum of $2,500. Plaintiff has duly appealed. We have jurisdiction because the amount in dispute is $97,500.

Since the only points raised on this appeal relate to damages we will confine our factual statement to that issue. The collision occurred at about 9 a. m. on September 4, 1965. Plaintiff was thrown into the windshield and received three facial lacerations. One was eight centimeters long extending vertically from the right eyebrow

into the hairline. Another, ten centimeters in length, ran from the inner aspect of her right eye across her forehead into the hairline, and the third, six centimeters in length, tongue-shaped or in the form of an inverted horsehoe, was on her right cheek. Plaintiff was taken to the emergency room of the Chillicothe Hospital where she was met by her physician, Dr. W. L. Fair, who did rather extensive repair work in suturing the lacerations herein described. X-rays also disclosed that she had a comminuted fracture of the distal end of the radius in her right arm. A cast was applied which remained on her arm for about six weeks. Dr. Fair testified that there was some permanent limitation in turning the right wrist, and that the scars on plaintiff's face were permanent.

Plaintiff was pregnant at the time of the collision and gave birth to a child about five weeks following the accident. Dr. Fair testified that although the child was born a month early the birth and delivery were normal and that nothing connected with the birth was related in any way to the accident.

Plaintiff was 18 years old at the time of the collision. She testified that she did not remember anything after the collision until she awoke in the hospital room late in the afternoon of that day; that when she awoke she had a burning or stinging sensation in her face and her right arm hurt; that she became upset because she didn't feel the baby move and was afraid that she had lost it; that she would sometimes dream about the baby being deformed; that she remained in the hospital four days and upon dismissal stayed a few days in the home of her parents before going back to her own home.

Plaintiff further testified that at the time of the accident she was employed as a nurse's aide at the Darr Nursing Home at a salary of $100 per month; that she went back to work in February 1966 as a nurse's aide at the Chillicothe Hospital where her salary was $165 per month but she worked longer hours than she had worked at the nursing home; that she quit work at the hospital in June 1966 and in December of that year accepted employment from Dr. Weber as a receptionist in his office at a salary of $200 per month; that she was employed by Dr. Weber at the time of trial and was doing everything in assisting him that one working in a doctor's office would ordinarily do. She further stated that after prolonged typing or writing she had pain in her right arm and that she could not shake down a thermometer with that arm; that plastic surgery had been performed on her scars by Dr. Bingham in operations at the Medical Center in Columbia in February and August of 1966. Plaintiff also testified that she quit nursing because many patients would ask about the scars on her face and she felt that that was not good for the patients and it also depressed her; that at trial time she was more nervous and more self-conscious and embarrassed around strange people than she had been before her injuries; that she restricted her attendance at social and civic functions where there were people in attendance with whom she was not acquainted.

Dr. Hal G. Bingham of the University Medical Center in Columbia testified that he performed plastic surgery on plaintiff's face on February 3, 1966, and again on August 25, 1966. At the time of the February operation plaintiff entered the hospital on the 2nd and was dismissed on the 4th. In August plaintiff entered the hospital and was operated upon on August 25 and was dismissed the next day. We see no need to detail the technical processes followed by Dr. Bingham in these operations. He testified that both were performed while plaintiff was under a general anesthetic and that she suffered no pain during the operations and had only a minimum amount of post-operative discomfort; that all the scars are permanent and that plaintiff was deeply concerned about them. He stated that plaintiff had made a good recovery, both from the original lacerations and the subsequent

surgery; that the surgery was successful and excellent results achieved; that he last saw plaintiff on July 12, 1967, and observed that the scars were maturing satisfactorily and he saw no need for further revision of them; that a person of light blonde complexion, such as plaintiff, will not have as much of a problem with scars as persons with dark skin; that with a person plaintiff's age the scars will become less noticeable as time passes.

Eight photographs of plaintiff's face were admitted in evidence. Four were taken at various angles a few days after the original repair of the lacerations. Two were taken shortly before the first plastic surgery, and two were taken immediately after the last plastic surgery operation. Plaintiff offered in evidence eleven color slides taken at the Medical Center, some of them showing plaintiff's face shortly before the plastic surgery and some showing her condition following both plastic operations. The court sustained an objection to those exhibits and they were not admitted in evidence. They will be discussed more in detail in considering one of the points raised on this appeal.

Plaintiff offered evidence of her doctor and hospital bills which totaled $917.05. Life expectancy tables were also offered in evidence which showed that a female person 18 years of age had a life expectancy of 57.70 years. Also offered were a number of witnesses who corroborated plaintiff's testimony indicating that she was embarrassed around "strange" people; that she stayed at home more; would try to hide her scars; that she was nervous, somewhat forgetful, and more apt to indicate short temper than before her injuries.

Defendant had plaintiff examined by Dr. Joseph F. Gale on September 13, 1967, about five months before the trial. He testified that plaintiff's scars were not obvious; that when she first came into his office he did not notice any scars until she mentioned them although he presumed she was wearing makeup; that his examination of her wrist indicated a normal range of motion and no disability or limitation in respect thereto; that the X ray indicated that the fracture was well healed and in perfect alignment as he could not tell from the X ray that there had even been a fracture.

■ The first point we will consider is plaintiff's contention that prejudicial error resulted from the ruling of the trial court in sustaining an objection to the offer of the eleven color slides of plaintiff's face. In ruling this question we will assume that they were properly identified and were material. It is our conclusion, however, that their exclusion did not constitute reversible error.

■ We have stated that "there is no logical reason why colored photographs should not be used in evidence, subject to the same limitations and restrictions as black and white photographs." Faught v. Washam, Mo.Sup., 329 S.W.2d 588, 599. We have often held that the admission or rejection of a photograph rests in the first instance in the trial court's discretion and its ruling will not be disturbed on appeal unless that discretion has been abused. Dudeck v. Ellis, Mo.Sup., 399 S.W.2d 80. In this case, prior to the offer of the color slides, plaintiff had offered and the court had admitted eight 8″ x 10″ close-up photographs of plaintiff's face which showed the scars at all material times, including dates close to the times the color photographs were taken. After examining both sets of photographs we have concluded that it was not necessary for the jury to view color photographs in order to determine plaintiff's appearance on the dates in question. It is a well settled rule that any error in the exclusion of evidence is harmless where the same facts are shown by other evidence. McDaniel v. McDaniel, Mo.Sup., 305 S.W.2d 461[4]. Moreover, none of the photographs were of much value in the determination of the issue of damages. This for the reason that it was not of much consequence as to how plain-

tiff looked for the relatively short period of time from the date of the accident to trial time. The important question was how she would look for the remaining 55 years of her life expectancy; and the best evidence from which the jury could form a judgment on that matter was the appearance of plaintiff herself who was present throughout the trial. In the circumstances presented, we rule that the trial court did not abuse its discretion and hence did not err prejudicially in excluding the cumulative and repetitious exhibits in question.

Plaintiff's remaining contention is that she should have a new trial because the "verdict awarded plaintiff is so inadequate that it is manifest it resulted from bias, passion and prejudice on the part of the jury." In considering this point we should have in mind the following established rules:

■ "In a tort action the determination of the amount to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the credibility of witnesses and the weight and value to be given their testimony on a fact issue. Pinkston v. McClanahan, Mo., 350 S.W.2d 724, 729[5]; Combs v. Combs, Mo., 284 S.W.2d 423, 425[2]; Coghlan v. Trumbo, Mo., 179 S.W.2d 705–706[4]. The trial court has a wide discretion in ruling a motion for new trial which alleges that the damages awarded are inadequate since that court may take into consideration the credibility of the witnesses and may weigh the evidence. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 110[8]. * * *

■ "Since the jury at the trial and the trial judge in overruling the motion for new trial have passed on the credibility of the witnesses and the weight of the evidence, the appellate court in reviewing the adequacy of the damage award must view the evidence in the light most favorable to the verdict. * * * Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount of the verdict was due to passion and prejudice." Homeyer v. Wyandotte Chemical Corporation, Mo.Sup., 421 S.W.2d 306, 309.

■ We have heretofore stated the evidence in some detail. There is no need to restate it in our discussion of this point. Plaintiff's hospital and doctor bills totaled $917.05. She has some permanent scars on her face and suffers some nervousness and embarrassment as the result of her injuries. However, Dr. Gale's testimony would indicate that she had no disability in respect to her right wrist and that the scars were not obvious when plaintiff used makeup. And Dr. Bingham stated that the scars would become less noticeable with the passing of time.

Viewing the evidence in the light most favorable to the verdict we are unable to conclude that a verdict of $2,500 was so shocking and grossly inadequate as to indicate that it resulted from passion and prejudice on the part of the jury.

In support of her contention plaintiff has cited and strongly relies on Hufft v. Kuhn, Mo.Sup., 277 S.W.2d 552. That case, however, in which we granted a new trial for inadequacy, is readily distinguishable on the facts. In Hufft the verdict was $1,000 and the medical expense totaled $777.60. The uncontroverted evidence in that case indicated that plaintiff was critically injured, had major surgery, suffered intense pain, had facial disfigurement, and suffered some permanent injuries. As indicated, we do not find Hufft persuasive in plaintiff's behalf.

The judgment is affirmed.

DONNELLY, P. J., and FINCH, J., concur.

MORGAN, J., not sitting.