Elizabeth **STOGSDILL**,
Plaintiff-Respondent,

v.

**GENERAL AMERICAN LIFE
INSURANCE COMPANY,**
Defendant-Appellant.

Nos. 37374, 37375.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 27, 1976.
Motion for Rehearing and for Transfer
Denied Sept. 30, 1976.

Kortenhof & Ely, Frank E. Strzelec, St. Louis, for appellant.

Charles J. McMullin, St. Louis, for respondent.

GUNN, Judge.

This case involves two appeals which we shall treat separately. The first appeal is from a jury verdict awarding plaintiff-respondent $2,500 under a group accidental death policy issued by defendant-appellant; the second is from the trial court's order awarding plaintiff's attorney $400 as costs for expenses in taking a deposition of one of defendant's witnesses. We affirm as to the $2,500 jury verdict and reverse as to the $400 attorney's expenses.

We initially deal with the appeal from the jury verdict awarding plaintiff $2,500 in which the defendant raises three points of alleged error: 1) that plaintiff failed to make a submissible case under the insurance policy provisions and that the judgment was contrary to Missouri law; 2) that the plaintiff's verdict director contained a misstatement of the law and did not meet the brevity and simplicity requirements of Rule 70.01(e); 3) that the trial court erroneously admitted certain photographic evidence.

The principal in this case is Odis Stogsdill whose life was abruptly interrupted by a shotgun blast administered by his wife, Wilma Stogsdill. The dispute in this case centers on the $2,500 accidental death benefit provision of a standard life and accident group insurance policy issued by the defendant insurance company and covering the life of Odis Stogsdill. Plaintiff was the named beneficiary of the proceeds of the policy, and defendant concedes that plaintiff, as named beneficiary, is entitled to $2,500 under the standard life provisions of the policy covering Odis. But defendant challenges plaintiff's right to $2,500 accidental death benefits, charging that Odis was the aggressor in a brouhaha leading to his death. Defendant asseverates that since Odis was the aggressor in a family imbroglio, defendant's motion for directed verdict should have been sustained. Defendant argues that as a matter of law an aggressor killed in the course of his aggression has voluntarily assumed the risk of being killed, and a beneficiary may not, therefore, recover accidental death benefits.

In answer to defendant's initial contention that the judgment on the jury verdict was contrary to Missouri law and that the trial court thereby erred in not sustaining defendant's motion for directed verdict, we first indite some basic legal tenets. First, in reviewing the trial court's action in denying defendant's motion for directed verdict we view the evidence in the light most favorable to the plaintiff. *Dollar v. Ozark Engineering Company,* 500 S.W.2d 727 (Mo.App.1973); a directed verdict, being a drastic action, should be granted only where reasonable men in an honest and impartial exercise in their duty could not differ on a correct disposition of the case. *McCarthy v. Wulff,* 452 S.W.2d 164 (Mo.1970); *Eyler v. Allison,* 500 S.W.2d 49 (Mo.App.1973). Second, in a question in-

volving accidental death insurance the plaintiff need only establish that the insured's death resulted from violent means to create a presumption of accident. *Connizzo v. General American Life Ins. Co.,* 520 S.W.2d 661 (Mo.App.1975). This purely procedural and wholly rebuttable presumption has the effect of shifting the burden of going forward to the defendant, but the ultimate burden of proof by the preponderance of evidence abides at all times with the plaintiff. *Di Paoli v. Prudential Insurance Co.,* 384 S.W.2d 861 (Mo.App.1964); *Ward v. Penn Mutual Life Insurance Company,* 352 S.W.2d 413 (Mo.App.1961).

■ The evidence in this case was undisputed that Odis Stogsdill died a violent death from a shotgun wound; therefore, the presumption of accident was established and the burden of going forward shifted to the defendant. Thus, a directed verdict as sought by the defendant at the closing of the plaintiff's case would be error. But going further, in determining if a death is accidental for insurance policy purposes where the insured has voluntarily exposed himself to peril, the keystone is whether death is unforeseeable and unexpected or whether a natural or probable consequence of the insured's actions. Where the danger to which the insured has caused himself to be exposed is by reason of resistance to his own aggression, the foreseeability of death is determined by the character of the aggression and of the resistance likely to be employed in repelling that aggression. *Winston v. General American Life Insurance Co.,* 469 S.W.2d 51 (Mo.App.1971); *Perringer v. Metropolitan Life Ins. Co.,* 241 Mo.App. 521, 244 S.W.2d 607 (1951); *Podesta v. Metropolitan Life Ins. Co.,* 150 S.W.2d 596 (Mo.App.1941). Thus, the mere fact that the insured may have been the aggressor in an altercation ultimately leading to his death does not preclude recovery by a beneficiary. If the beneficiary proves that the resistance offered by the person being assailed was not of the kind or degree that should have been reasonably anticipated by the insured from the character of the initial aggression, the beneficiary may be entitled to recover under the provisions of the acci-

dental death policy. *Camp v. John Hancock Mut. Life Ins. Co.,* 165 S.W.2d 277 (Mo.App. 1942). The converse situation, where the insured's assault invites deadly retaliation, would preclude accidental death benefit recovery. *Di Paoli v. Prudential Insurance Co.,* supra; *Podesta v. Metropolitan Life Ins. Co.,* supra; *Russell v. Metropolitan Life Ins. Co.,* 149 S.W.2d 432 (Mo.App.1941). If reasonable minds differ as to the foreseeability of death resulting from the insured's action, a jury question exists. *Camp v. John Hancock Mut. Life Ins. Co.,* supra.

■ There were two questions for jury consideration in this case: 1) Was Odis the aggressor in the assault? 2) If Odis was the aggressor, were his actions such that death was a foreseeable consequence? There was ample evidence that he was not the aggressor. Plaintiff's evidence was that Odis entered his home on the evening of his death in "a pretty good mood" and was apparently attacked by two of Wilma's children by a previous marriage; that Odis was struck several times with a long metal flashlight by one of his stepsons and was not faring very well in fending off his attackers when Wilma shot him in the back. Defendant's evidence was that Odis had arrived home in the evening in a mordacious and bellicose mood and began striking Wilma and her children, rendering Wilma unconscious; that when Wilma regained her senses she shot Odis as he was struggling with her sons. There was also evidence that Odis' elbow struck the shotgun during the melee causing it to accidentally discharge. In any event, there is a palpable conflict of evidence as to whether Odis was the aggressor vel non, and we leave the evidentiary conflicts for jury resolution. *Lamb v. Heiligers,* 532 S.W.2d 820 (Mo.App.1975). Thus, it was for the jury to resolve whether the feral attack made against Odis could have been reasonably anticipated so as to preclude recovery of accidental death benefits by the jury or whether Odis was in fact the aggressor. The jury's finding was favorable to plaintiff.

■ As to the second part of its argument that the trial court erred in failing to

sustain its motion for directed verdict, defendant asserts that plaintiff failed to make a submissible case, in that the group insurance policy covering Odis' life was not introduced into evidence. At trial plaintiff introduced a certificate of insurance and booklet published by the defendant outlining the group insurance policy benefits, including the double indemnity provisions for accidental death. The group policy was not introduced. Defendant for the first time on appeal argues that the plaintiff failed to make a case, because the policy was not introduced. Defendant's argument in this regard arises too late for our consideration. The authority of this court to review allegations of error is recited in Rules 78.07 and 84.13(a) V.A.M.R. To be reviewable, allegations of error must first have been presented to the trial court with a degree of specificity and definiteness to sufficiently apprise the court of the particular acts or rules alleged to be erroneous. *Skelton v. General Candy Co.,* 539 S.W.2d 605 (Mo. App.St.L.Dist.1976); *Pasley v. Newton,* 455 S.W.2d 43 (Mo.App.1970). "The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review." *Fruit Supply Co. v. Chicago, B. & Q. R. Co.,* 119 S.W.2d 1010, 1011 (Mo.App.1938). Since the trial judge was never presented with an opportunity to rule on this question under consideration raised initially in defendant's brief, it was not preserved for review. *Schneider v. Southwestern Bell Telephone Co.,* 413 S.W.2d 16 (Mo.App.1967).

▬▬▬ Defendant next assails plaintiff's verdict directing instruction which provides:

"Your verdict must be for plaintiff if you believe that Odis Stogsdill's death was the result of an accident, unless you believe plaintiff is not entitled to recover by reason of instruction 3.

"The term 'accident' as used in these instructions means either that the deceased Odis Stogsdill was not the aggressor in the altercation, or, if he were, he could not reasonably foresee death at the hands of his wife Wilma Stogsdill, and the terms [sic] applies even if the shooting was intentional."

Defendant argues that the instruction is argumentative and confusing, is not simple and brief as required by Rule 70.01(e) V.A. M.R. and is a misstatement of the law. We believe that plaintiff's verdict director complies with Rule 70.01(e) V.A.M.R. Defendant has not indicated in what manner the instruction is argumentative and confusing, and we do not perceive it to be so on its face. Nor, can it be said that the instruction is not simple and brief; we note that it is no more complex than defendant's own converse Instruction No. 3 referred to in the footnote.[1] Neither does it appear in the candescence of our previous discussion concerning the definition of accidental death where the insured is the aggressor that plaintiff's verdict director is a misstatement of the law. The key element in determining whether death is accidental is its foreseeability. Aggression by the insured is but a circumstance to be considered in this determination; it is not dispositive of the issue as defendant implies. The issue of deadly encounter and the foreseeable results therefrom, and, indeed, whether Odis was in fact the aggressor, were jury questions under the evidence and not conclusions to be assumed in the instructions as defendant urges.

▬▬▬ Defendant further argues that the trial court erred in allowing plaintiff to introduce photographs of the deceased pur-

1. Instruction No. 3:
"Your verdict must be for the defendant if you believe that Odis Stogsdill was killed as a result of his being the aggressor and voluntarily and culpably provoking and engaging in an altercation with another person under such circumstances as to charge him with reasonable anticipation that his aggression would be met by such forceable resistance as to put him in danger of death or great bodily harm."

portedly showing the position of his body after the fatal shooting. Defendant charges that the photographs were inflammatory, prejudicial, without probative value, and the accuracy of the photographs was not determined through testimony of the photographer taking the pictures. The admission of photographic evidence rests in the sound discretion of the trial court. *Long v. Hooker,* 443 S.W.2d 178 (Mo.1969); *State ex rel. State Highway Com'n v. Thelnor, Inc.,* 485 S.W.2d 443 (Mo.App.1972). Even though photographs are gruesome and depict serious injuries they need not be excluded if they satisfy the rules as to the admission of demonstrative evidence. *McWilliams v. Wright,* 460 S.W.2d 699 (Mo. 1970); *State v. Thresher,* 350 S.W.2d 1 (Mo. 1961). The photographs must be sufficiently verified, must fairly and accurately reflect the situation, and must be likely to be of sufficient assistance to warrant their use. *Reed v. Shelly,* 378 S.W.2d 291 (Mo.App. 1964). The photographs here were verified as being fair and accurate representations of the scene depicted by an eyewitness to the shooting and were important as evidence to support plaintiff's theory of the decedent's position at the time he was shot. It is not necessary, as defendant contends, that the photographer's identity be made known to the court or that he be present to verify the photographs' authenticity so long as a competent and knowledgeable witness can attest to their veridicality. See *State v. Sanders,* 365 S.W.2d 480 (Mo.1963). The trial court properly exercised .its discretion in admitting the contested photographs into evidence.

We therefore, find no prejudicial error in the judgment in favor of plaintiff for $2,500 for the accidental death benefits and affirm that judgment.

The second appeal relates to the order of the trial court taxing as court costs certain expenses of plaintiff's attorney in attending the deposition of Wilma Stogsdill in Mtn. View, Arkansas. The total amount taxed as expenses was $400 ($200 for out of pocket expenses and $200 for plaintiff's attorney's time). On two occasions prior to the deposition in question defendant gave plaintiff's attorney notice that Wilma Stogsdill would be deposed; however, on each occasion the scheduled deposition was cancelled in advance. Upon receiving notice of the third deposition plaintiff objected in a hearing before the circuit court. The court ordered plaintiff to attend but provided that counsel's expenses would be taxed as costs. Plaintiff's attorney traveled to Mtn. View, Arkansas, and the deposition was taken by the defendant.

Rule 57.03(h)(1) V.A.M.R. provides that if a party giving notice of a deposition fails to attend and the noticed party does attend, the court may order the party giving notice to pay the other party's reasonable expenses, including attorney's fees. In addition, Rule 61.01(f) V.A.M.R. allows the trial court, where a party fails to appear at a deposition after being served with notice, to "make such orders in regard to the failure as are just."

It is primarily under the foregoing rules that the plaintiff seeks to justify the trial court's order. Under the facts of this case, however, these rules are inapposite. On each of the two occasions in which the deposition was cancelled, plaintiff's attorneys were notified in advance; therefore, they were not forced to attend a deposition at which the other party failed to appear. Plaintiff's attorney alleges in his motion to tax expenses as costs that he was forced to cancel appointments and dockets, but he does not allege any pecuniary loss as a result thereof. Therefore, the trial court could not have properly awarded damages for expenses arising from these previous cancellations.

 It is manifest that the court was not empowered to tax as costs the expenses incurred in attending the foreign deposition which the noticing party did attend. Ordinarily attorney's fees are not recoverable as costs of litigation in the absence of statute. *Edwards v. Smith,* 322 S.W.2d 770 (Mo. 1959); *In re L. G.,* 502 S.W.2d 33 (Mo.App. 1973). The relevant statute regarding the taxation as costs expenses of depositions is § 492.590 RSMo 1969. This statute limits

costs and expenses of taking depositions to those enumerated—none of which could be construed as encompassing attorney's fees. If the two prior notices for depositions had not been given, the plaintiff could not have been awarded the foreign deposition costs under any theory. The fact that two prior depositions were cancelled does not change this result, as plaintiff's attorney in attending the Mtn. View deposition incurred no expenses other than those normally incident to attending a foreign deposition; therefore, the order of the trial court taxing these expenses as costs must be reversed.

Judgment for $2,500 for accidental death benefits in favor of plaintiff is affirmed; judgment of $400 for attorney's expenses is reversed.

SIMEONE, P. J., and KELLY, J., concur.