**Louis VOSS, et al., Appellants,**

v.

**James ANDERSON, Respondent.**

No. 52742.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 15, 1987.

Motion for Rehearing and/or Transfer Denied Jan. 14, 1988.

Application to Transfer Denied March 15, 1988.

Thomas M. Dee, St. Louis, for appellants.

Edward James Hanlon, Assoc. City Counselor, St. Louis, for respondent.

KELLY, Judge.

Louis Voss and his wife Linda, along with their two children Jason and Melissa, initiated their personal injury action against respondent James Anderson for damages they sustained in an automobile collision when respondent struck the rear end of their automobile with his police car. Their total prayer sought damages of $440,000. The jury awarded damages of $3,500 to Louis Voss, $5,000 to Linda Voss, $750.00 to Jason Voss and $250.00 to Melissa Voss. The trial court denied their motion for new trial challenging the adequacy of the verdict and rendered its judgment in accordance with the jury's verdict. Louis, Linda, and Jason Voss appeal. We affirm the judgment of the trial court.

The evidence adduced at trial reveals the following facts. At the time of the accident Louis Voss and his thirty-three year old wife Linda had been married since October 1970, and were living in Arnold, Missouri. Their son Jason was seven and daughter Melissa, nine months.

The accident occurred early Saturday afternoon on February 13, 1982, as appellants travelled north on Grand Avenue in south St. Louis. Grand Avenue, normally six lanes with two traffic and one parking lane on each side, had been reduced to single lanes in either direction in the aftermath of a heavy snowstorm. The road was dry

with patches of water from melting snow; the day, cold and clear to partly cloudy.

Louis, who was driving the family's 1980 Pontiac Phoenix, noticed cars stopping ahead of him. He, in turn, slowed his car until it also stopped. A few minutes later, respondent James Anderson, while on duty, struck their car in the rear with his police car. He estimated his speed at less than twenty miles per hour. At impact, Louis Voss "went forward", his "head went backward" and he "blacked out" momentarily. The front bench seat of their car went off its track, sliding into the rear passenger area where the children were seated. Their car did not hit the vehicle in front of them, about eight to ten feet away.

After the accident occurred, James Anderson radioed the police for assistance. An ambulance arrived and took Linda and the two children to the hospital. Louis remained behind, speaking with the other officers investigating the accident. He than drove his car to the hospital where he joined his wife and children. Jason and Melissa each sustained a single bruise. They were released after examination without further treatment. Neither Louis nor Linda sought any medical attention at the hospital.

Although property damage was not at issue at trial, photographs shown to the jury and included as exhibits before us indicated the extent of damage to each of the cars. The amount for the repairs to either vehicle was not in evidence. The left and right rear fenders of the Pontiac, as well as the trunk, had buckled in, with the rear bumper and back end of the car pushed downward. The body damage to the Pontiac also extended to the area over each of the rear tires. The police car, a 1980 Ford, sustained some damage to its front bumper, fender, and hood. Despite the damage, both cars were drivable after the accident.

Louis Voss, employed in a managerial position of a freight trucking system, returned to work the following Monday without incident. Linda worked for Consolidated Grain and Barge Company in the freight department monitoring and coordinating the loading and release schedules of barges. When she first returned to work as scheduled on the Tuesday following the accident, she fainted. She was taken to the emergency room at Incarnate Word Hospital. The diagnosis was muscle spasm and x-ray films taken showed no problems. The cervical curvature and the intervertebral disc spaces of her spine appeared normal, and the soft tissue unremarkable. After noting her condition to be "good", the hospital discharged her that day with the advice that she take muscle relaxants.

The following day both Linda and Louis consulted their family physician. He prescribed muscle relaxants and pain pills and charged them $20.00 for his services. Both Linda and Louis continued to experience back and neck discomfort. They subsequently consulted Dr. Schwidde, a chiropractor, in late February. Louis saw Dr. Schwidde for approximately one year. Jason subsequently developed back complaints and also saw Dr. Schwidde for about a year.

When Linda saw Dr. Schwidde, she described her symptoms to him as dizziness, shakiness, diarrhea, sudden crying spells, and bumping into walls. Dr. Schwidde stated these were symptoms of whiplash and diagnosed her as suffering from "cervical brachial syndrome" due to muscle spasms. Despite her frequent visits to him over the next five weeks, she became increasingly irritable. She cut back her work schedule. Not detecting any visible improvement, Dr. Schwidde suggested she consult a physician.

She saw Dr. Corder, an internist her brother knew. Dr. Corder admitted her to St. Mary's Hospital May 12, 1982, and took a series of x-rays that day. Those films, like the ones taken at Incarnate Word Hospital, were generally unremarkable.

Upon Dr. Corder's referral, Dr. Hanaway, a neurologist, also examined her. Dr. Hanaway conducted a battery of tests, including C.T. scan and x-rays. He testified none of these revealed any identifiable problems. He then prescribed double traction for her neck and low back problems during her two week hospital stay.

She was discharged from St. Mary's Hospital on May 28, 1982. The discharge summary from Dr. Corder noted she was given medication. His summary also contained the remarks: "lumbar tract accident, home discharge, diagnosis traumatic low back and neck strain status, post tubalization and tension headaches; follow up, I will see patient in my office."

Dr. Hanaway had found during his treatment of Linda that her major problem was depression. As he expressed it, she suffered from "two major problems—two physical ones, in her neck and low back, and a psychiatric one which was more profound than I realized initially." After this discovery, Dr. Hanaway recommended that Linda see Dr. Ulett, a psychiatrist. Dr. Ulett, who utilized acupuncture in his treatment of Linda, was unsuccessful in alleviating her physical discomfort with this technique. Still suspecting "a possible psychosomatic etiology of her complaints", Dr. Hanaway suggested Dr. Knowles to Linda.

Dr. Knowles, also a psychiatrist, after listening to her symptoms, opined that "she was suffering autonomic nervous system instability and mood liability as a consequence of her physical and psychic trauma". His treatment plan relied upon sleep therapy to break the anxiety chain enmeshing Linda. She was hospitalized for about one month during August 1982 at Deaconess Hospital where she received sleep therapy, group therapy, physical therapy, and medication.

Upon her release, she started physical therapy in September 1982 as an outpatient at St. Anthony's Hospital. She eventually returned to work for her employer on a part-time basis the following year in September 1983. She was full-time again by January 1984; first, as a secretary and then, as an invoice accounting clerk, a position she described as less stressful than her original job. About two years later, she quit, deciding to remain at home working as a full-time mother and housewife.

Drs. Schwidde, Hanaway, Ulett, and Knowles each testified at trial by deposition expressing the opinion generally that Linda's physical and psychological problems were triggered by the car accident. Dr. Knowle's opinion was less dogmatic during cross-examination. When asked by respondent's counsel, "Are you saying that the automobile accident was the only cause for her emotional problems?", he responded as follows:

That's difficult question to answer because given a sufficient degree of stress, it is our opinion that everybody will decompensate and develop some kind of psychiatric disability, and the sufficient degree of stress in Mrs. Voss' case appears to have been the automobile accident. I cannot rule out that some comparable stress other than an automobile accident wouldn't produce a like result.

In subsequent questioning, however, he reiterated his opinion that the automobile accident caused her physical and mental problems. When asked by respondent's counsel, "you're not going to tell the jury that Mrs. Voss would not have experienced this depression absent the automobile accident?", Dr. Knowles maintained, "My position has been that the precipitating cause of Mrs. Voss' depression was the automobile accident and the consequences thereof."

Respondent put on no expert witnesses to challenge the medical evidence presented by appellants. Respondent's questions to Linda and her physicians, however, did suggest several alternative causes for Linda's physical and psychological problems. These possible alternatives included: post partum depression, worry about being overweight, distress over her parents' and relatives' failure to visit during her hospitalization, a schizophrenic half-sister indicating a familial predisposition to mental illness, compensation neurosis, job stress, and her tubal ligation. Dr. Knowles expressly rejected the validity of several of these alternative causes for Linda Voss' injuries.

Appellants adduced evidence of more than $25,000.00 in medical expenses and lost wages of $39,000.00, together totalling more than $64,000.00 in special damages for Linda. The jury awarded her $5,000.00. Dr. Schwidde's fees, plus the Cardinal

Glennon hospital charge totalled $1,092.00 in damages for Jason. The jury awarded him $750.00. Louis Voss sought damages for loss of his wife's consortium. He also sought damages for his own personal injuries resulting in over $3,400.00 in bills to Dr. Schwidde. The jury awarded him $3,500.00 for his personal injuries and nothing on his claim for loss of consortium. Melissa, nine months old at the time of the accident, and apparently treated only at the emergency room of Cardinal Glennon, received $250.00 from the jury.

Although Linda, Louis, and Jason Voss have raised two points on appeal, they present in essence only one issue—whether the trial court abused its discretion as a matter of law in refusing them a new trial on damages. Their motion for new trial stated only that the jury verdict was against the weight of the evidence. Here, they appear to contend the trial court erred in not granting a new trial because the jury verdict was grossly inadequate and contrary to the weight of the evidence. They argue that, given the extensive, uncontroverted evidence of damages far in excess of the amount awarded, the paucity of the jury's award entitled them to a new trial on the issue of damages.

■ An appellate court does not weigh the evidence and views the evidence and all inferences therefrom in the light most favorable to the verdict. *Lauber v. Buck*, 615 S.W.2d 89, 91 [1] (Mo.App.1981). Further, the essential question on appellate review of an order either granting or denying a motion for new trial on the grounds of inadequacy of the verdict is whether or not the trial court has abused its discretion. *Summers v. Fuller*, 729 S.W.2d 32, 33 [1] (Mo.App.1987). Where the trial court has granted the motion, only the evidence which would have supported a larger verdict is looked to; when the motion is refused, appellate review is limited to consideration of the evidence which supports the trial court's action. *Id.* In a tort action, the determination of the amount to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the credibility of

witnesses and the weight and value to be given their testimony on a fact issue. *Id.* at 33–34.[2]. The trial court has wide discretion in ruling on a motion for new trial which alleges that the damages are inadequate since that court may take into consideration the credibility of the witnesses and may weigh the evidence. *Id.* at 34 [3].

Echoing *Long v. Hooker*, 443 S.W.2d 178, 182 [7, 8] (Mo.1969), we further stated in *Summers*:

Since the jury at the trial and the trial judge in overruling the motion for new trial have passed on the credibility of the witnesses and the weight of the evidence, the appellate court in reviewing the adequacy of the damage award must view the evidence in the light most favorable to the verdict.

... Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount of the verdict was due to passion and prejudice. 729 S.W.2d at 34.

It is only when there is a complete absence of probative fact to support a verdict that an appellate court will interfere. *Lauber*, 615 S.W.2d at 91 [2]. Upon our careful review of this case, we decline to do so.

■ There is no doubt that the evidence reflected appellants incurred expenses in excess of the damages the jury awarded. However, that the jury found respondent negligent did not compel the jury to find that all the post-accident ailments detailed by appellants, particularly the trauma suffered by Linda Voss, were proximately caused by respondent. While appellants' four medical experts testified that the February collision caused Linda's psychological illness, the jury was free to reject their opinions.

A jury may believe all of the testimony of any witness, or none of it, or may accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case. *Wells v. Bellman*, 531 S.W.2d 770, 771 [1] (Mo.App.1975). If the damages award is founded upon any reasonably rational ba-

sis, it will be upheld as responsive to the evidence, and one possibility alone will suffice. *Id.* [4].

A reasonable, basis for the jury's award to Linda Voss is the possibility the jury believed she was predisposed to her psychiatric disorders. They might also have found incredible the medical experts' opinions that the otherwise relatively minor accident could trigger the extensive psychological damages claimed by Linda. Despite the subjective symptoms, a muscle spasm was the only observed physical impairment to her. The jury could reasonably conclude her ailments to be psychoneurotic. They were free to believe, as respondent's questioning suggested, some comparable stress other than the automobile accident produced her mental problems. These possibilities provide a reasonably rational basis to support the damages awarded. We believe the verdict in Linda Voss' favor was not unresponsive to the evidence, despite the challenge to its adequacy.

The personal injury damages awarded both Jason and Louis Voss are reasonably commensurate with the nature and the extent of the injuries each of them incurred. Appellants' claim of reversible error in the jury's failure to award Louis Voss damages for loss of his wife's consortium is not properly preserved for appellate review. Appellants' motion for new trial stated only that the verdict was against the weight of the evidence. However, on appeal, he bases his loss of consortium claim on the theory of inconsistent verdicts, that is, where one spouse's proof of loss is uncontroverted (Louis' uncontradicted testimony of their disrupted sex life) and the other spouse (Linda) has received a damage award for personal injuries, the jury's failure to award Louis loss of consortium damages is inconsistent with their verdict for Linda. Even were we to consider the point properly preserved, it lacks merit. The failure of the jury to award Louis Voss any damages for loss of his wife's consortium or services simply reflects that the jury did not find his testimony regarding his claim credible.

A reasonably rational basis supports the damages awarded appellants by the jury. We conclude that the trial court did not abuse its discretion in refusing to grant a new trial on the issue of damages. The judgment is affirmed.

KAROHL, P.J., and SMITH, J., concur.