Claudia M. CAPPO, Appellant,

v.

ALLSTATE LIFE INSURANCE COMPANY, Respondent.

No. WD 43497.

Missouri Court of Appeals, Western District.

April 16, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1991.

H. Kent Desselle, Independence, for appellant.

Michael J. Jerde, Kansas City, for respondent.

Before BERREY, P.J., and GAITAN and FENNER, JJ.

GAITAN, Judge.

This is an appeal by plaintiff, Claudia Cappo, from a judgment in favor of defendant Allstate Life Insurance Company in a breach of contract action to recover the accidental death benefit under an insurance policy.[1] The parties waived their right to trial by jury and submitted the case to the court upon a stipulation of uncontroverted facts. The trial court entered judgment in favor of defendants. The appellant alleges the trial court erred by concluding (1) that Paul Cappo was not dead, and (2) that Paul Cappo did not die an accidental death.

■ As this case was submitted on stipulations of uncontroverted facts, we shall not restate those facts except as they apply to the disposition herein. Further, while the trial court ostensibly granted a motion for summary judgment in favor of defendant, Rule 74.04 requires that summary judgment shall be based upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. . . ." In this case the court's decision was based not upon the grounds listed in Rule 74.04, but upon the "Stipulations of Uncontroverted Facts"

---

1. The face value of the policy, $50,000, has been fully paid to plaintiff. Her cause of action in this suit focuses only on the additional $50,000 provided for in the accidental death benefit clause.

filed by the parties. It is clear from the record that both parties and the trial court regarded these uncontroverted facts as the most complete statement of the material facts possible. Further evidentiary proceedings before the court would have been fruitless concerning Paul Cappo's disappearance. The court's decision was a judgment on the merits, based upon the most comprehensive record of evidence possible and was in no respects summary in nature. Accordingly, our review will apply the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and not the standard traditionally associated with summary judgment.

■ Under Missouri law, if appellant was to carry her burden of proof she must have shown both: (1) that Paul Cappo is dead; and (2) that he died, directly and independently of all other causes, from accidental bodily injury. *Grandgenett v. National Protective Ins. Ass'n*, 229 Mo.App. 132, 73 S.W.2d 341, 342 (Mo.App.1934). The trial court determined that appellant did not carry her burden of proof for either requirement. We affirm.

### I.

■ The trial court concluded that appellant failed to sustain her burden of proof by failing to present strong and clear evidence that Paul Donald Cappo was dead. That failure alone would compel the trial court to enter judgment in favor of Allstate.

Appellant argues that the trial court erred in basing its decision totally on the "determination that there is no evidence that Paul Cappo is deceased." That argument, however, does not correctly characterize the ruling of the trial court. The trial court actually concluded that "the evidence before the Court is as strongly supportive of Paul Donald Cappo having voluntarily disappeared." Thus, the trial court ruled that the evidence that Paul Cappo voluntarily disappeared was as strong as the evidence that he was murdered. The court did not conclude that Paul Cappo had voluntarily disappeared, but rather that appellant had failed to meet her burden of

proving not only that he did not voluntarily disappear, but that he died from accidental bodily injury.

Appellant attempted to rely on the legal presumption of Paul Cappo's death created by his absence of at least five years. Mo. Rev.Stat. § 490.260 (1986); *Sanderson v. New York Life Ins. Co.*, 194 S.W.2d 221, 227 (Mo.App.1946) (holding that a common law presumption of death is triggered after an absence of seven years). This presumption was not conclusive, however. Missouri law holds that a presumption merely shifted the burden of going forward with the evidence to Allstate and did not relieve appellant of her burden of proof. *Connizzo v. General Am. Life Ins. Co.*, 520 S.W.2d 661, 665 (Mo.App.1975); *see also Sanderson*, 194 S.W.2d at 227–28. As the trier of fact, the trial court concluded from the evidence that it is equally likely that Paul Cappo voluntarily disappeared and was not killed.

It was within the province of the trial court to decide if the evidence satisfies appellant's burden of proving that Paul Cappo was dead. The trial court concluded that the evidence proved that it was just as likely that Paul Cappo voluntarily disappeared. Thus, the trial court held, in effect, that appellant did not sustain her burden of proving that Paul Cappo died from accidental bodily injury. Appellant's point is denied.

### II.

■ Under *Grandgenett*, appellant was also required to prove that Paul Cappo's alleged death resulted, directly and independently of all other causes, from accidental bodily injury. 73 S.W.2d at 342. For two distinct reasons the trial court could properly find that appellant failed to meet this burden.

In meeting the second prong of *Grandgenett*, appellant attempted to rely on a presumption that Paul Cappo's alleged death was the result of accidental injury. It is well settled that appellant cannot satisfy her burden of proof or make a submissible case by basing a presumption upon a presumption. *Tillotson v. Travelers Ins.*

*Co.*, 304 Mo. 487, 263 S.W. 819, 824 (Mo. banc 1924). After relying upon a presumption of Paul Cappo's death, appellant would be required to come forth with substantial evidence that the death was from accidental bodily injury. *Id.; Grandgenett*, 73 S.W.2d at 342. She has failed to do so, and attempts to rely instead upon two interlocking presumptions. Appellant's cause of action could not be proved by stacking presumption upon presumption and thus the trial court correctly entered a judgment against her. *Tillotson*, 263 S.W. at 824.

A second reason exists in support of the trial court's judgment. Appellant may recover the accidental death benefit under the policy only if she presents due proof that Paul Cappo "died, directly and independently of all other causes, from accidental bodily injury." It is well settled that appellant has the burden of proving that Paul Cappo died from "accidental bodily injury." *Connizzo v. General Am. Life Ins. Co.*, 520 S.W.2d 661, 664–65 (Mo.App. 1975). It is equally well settled under Missouri law that death from bodily injury is accidental only if it is unforeseeable and unexpected. *Piva v. General Am. Life Ins. Co.*, 647 S.W.2d 866, 875 (Mo.App. 1983); *Stogsdill v. General Am. Life Ins. Co.*, 541 S.W.2d 696, 699 (Mo.App.1976); *Murphy v. Western & Southern Life Ins. Co.*, 262 S.W.2d 340, 342–43 (Mo.App.1953). The *Stogsdill* court expressly recognized that "in determining if a death is accidental for insurance policy purposes where the insured has voluntarily exposed himself to peril, the keystone is whether death is unforeseeable and unexpected, or whether a natural consequence of the insured's actions." 541 S.W.2d at 699. This question is one to be resolved by the fact finder.

The court in *Herbst v. J.C. Penney Ins. Co.*, 679 S.W.2d 381 (Mo.App.1984), enunciated that test to be "whether the action of the insured is such that a reasonable person would conclude that danger of serious injury might result." *Id.* at 383. The uncontroverted evidence in this case conclusively establishes that Paul Cappo foresaw and expected his murder.

Paul Cappo was known by the Kansas City, Missouri Police Department as an associate of members of organized crime. He had incurred huge gambling debts including a $75,000 gambling debt to the Tropicana Casino, and had told appellant that "he had some business arrangements with some pretty bad people ... out south," and that if she didn't hear from him the first thing she was to do was to call his attorney who had instructions on what she should do. Prior to his disappearance, Paul Cappo devised a system for communication with appellant. She would telephone him on a beeper at approximately 5:30 p.m. each day. He would either call her back immediately, or would call her between 1:00 a.m. and 1:30 a.m. the following morning. If she didn't hear from him, the first thing she was to do was call his attorney, Tom Bernard. Paul Cappo did not contact his wife during the evening of June 10, 1980, or during the early morning of June 11. She therefore contacted Mr. Bernard, who instructed her to file a missing person's report with the Kansas City, Missouri Police Department, and who arranged to meet with her later on June 11. During that meeting, Mr. Bernard told her that her husband had told him that he had some dealings with people who would "soon enough stab you in the back than look at you," that he was "getting ready to meet these people," and that if he didn't call Mr. Bernard back, then Mr. Bernard would know "they have done something ... they got me." It is clear, therefore, that Paul Cappo consciously and deliberately decided to meet with these people and that by doing so he expected and foresaw his murder.

■ It is well settled in Missouri that a presumption merely shifts the burden of going forward with the evidence to Allstate. *Connizzo v. General Am. Life Ins. Co.*, 520 S.W.2d 661, 665 (Mo.App.1975). Allstate has met that burden by presenting the evidence that Paul Cappo foresaw and expected his murder. If appellant is to recover, she must present substantial evidence to make a submissible case that Paul Cappo did not foresee and expect his murder, or that his death resulted in some

other manner from accidental bodily injury. She has failed to do so.

Further, appellant apparently argues that murder is covered under the policy unless it is excluded from coverage. Thus, appellant apparently argues that since Allstate did not exclude death by murder, "the murder of Paul Cappo must fall within a definition of accidental death benefits." That argument not only attempts to rewrite the policy, but it also incorrectly assumes that all death by murder is covered by the policy. The policy provides coverage for death "from accidental bodily injury." Allstate recognizes that some murders can fall within the category of deaths "from accidental bodily injury." Under Missouri law, however, deaths such as that of Paul Cappo do not because they were expected and foreseen and thus were not "accidental." *Herbst v. J.C. Penney Ins. Co.*, 679 S.W.2d 381, 383 (Mo.App. 1984); *Piva v. General Am. Life Ins. Co.*, 647 S.W.2d 866, 875 (Mo.App.1983); *Stogsdill v. General Am. Life Ins. Co.*, 541 S.W.2d 696, 699 (Mo.App.1976); *Murphy v. Western & Southern Life Ins. Co.*, 262 S.W.2d 340, 342–43 (Mo.App.1953). Appellant's argument is without merit.

Finally, appellant cites *Herbst*, for the proposition that "when an insured assaults another and is killed as a consequence, his death is accidental unless it was the natural and probable result of his own actions reasonably foreseeable by him or by a reasonable, prudent man in his position." 679 S.W.2d at 383. Appellant attempts to establish that Paul Cappo was abducted from the auto auction that he was attending and where he was last seen and was subsequently murdered. There is no evidence that Paul Cappo was abducted. There is only evidence that he went to a meeting with those people who would "soon enough stab you in the back than look at you," and that prior to doing so, he told his lawyer that he was "getting ready to meet these people" and that if he didn't call his lawyer back, his lawyer would know "they have done something, they got me." The evidence conclusively establishes that Paul Cappo voluntarily exposed himself to his murderers at the meeting, that he foresaw and expected his murder, and that his murder was a reasonable consequence of his actions. Thus, his death was not accidental. *Stogsdill v. General Am. Life Ins. Co.*, 541 S.W.2d at 699. The trial court's judgment in favor of Allstate must be affirmed.

For the aforesaid reasons, the judgment of the trial court is affirmed.

All concur.